(No. 44847.)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. HENRY D. HOPKINS, Appellant.

*Opinion filed January 26, 1973.*

453

LINDA WEST CONLEY and KENNETH L. GILLIS, Illinois Defender Project, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and JOHN C. O'ROURKE, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE WARD delivered the opinion of the court:

On February 9, 1970, following a jury trial in the circuit court of Cook County, the defendant, Henry Hopkins, was found guilty of armed robbery and attempted rape. He was sentenced on February 26, 1970, to a term in the Illinois State Penitentiary of 75 to 100 years on the robbery conviction and to 10 to 14 years for the attempted rape. The court ordered the sentence for attempted rape to run consecutively to the robbery sentence.

Mrs. Carol Button, a case worker for the Cook County

Department of Public Aid, testified that between 9:50 and 10:00 A.M. on October 8, 1968, her husband, who was also a case worker, drove her to 8436 South Vincennes, Chicago, where she was to make a house visit. When her husband left, Mrs. Button knocked on a door at 8436 South Vincennes, an apartment building. While waiting for the door to be answered, she heard a car door close, observed that an off-white Cadillac auto had just been parked in front of the building where she was standing, and saw a man, whom she said was the defendant, walk toward her from the car. A moment later a woman answered the door, and in response to Mrs. Button's question, told Mrs. Button that the apartment of the Craig family, which she was to visit, could be entered through a side entrance of the building.

As she was speaking with the woman the defendant approached Mrs. Button and stood next to her. She turned and faced him and then turned back to the woman. When Mrs. Button had received the directions, she went to the side entrance of the building and entered. The defendant followed her through the side entrance and when Mrs. Button had gotten to the first stairwell the defendant came behind her and began pulling her down the stairs. She testified he pushed her against the wall on the stairwell and held a pocket knife with a light-colored handle to her neck. When she pleaded with him to let her go, he told her, "Shut up or I'll kill you." The defendant held Mrs. Button with his body and knife, reached into her purse and took eight dollars from the change purse. He then forced her to remove part of her clothing and committed the attempted rape.

When he left the building Mrs. Button immediately went to one of the apartments in the building and phoned the police and her employer, notifying them of the criminal attack and robbery. She testified that she saw the defendant at a lineup composed of six men, which was held on December 20, 1968. She identified the defendant

by placing her hand on his shoulder. On December 20, as at trial, the defendant had a growth of beard on his chin, Mrs. Button testified. He did not have the growth of beard on October 8, she said.

Her testimony was that the morning of October 8 was clear and sunny, and that the lighting was very good on the stairwell where she was molested. She estimated that the entire incident took between ten and fifteen minutes.

Mrs. Button was shown at trial a white-handled knife with a 2½-inch blade which had been found on the defendant when he was arrested on October 25, 1968. She said the knife resembled the one the defendant had held against her neck.

Leon Sizemore, an agent of the Federal Bureau of Investigation, testified that he had seen the defendant on September 28, 1968, and October 8, 1968, at 6:00 P.M., and that the defendant at those times had no growth of beard on his chin. The witness also said that he had seen the defendant driving an off-white Cadillac automobile on October 8. The circumstances under which the witness had seen the defendant were in no way related to this case.

Peggy Plair testified that on October 8, 1968, she had resided at 8436 South Vincennes, Chicago, and, as Mrs. Button had related, had given her directions to the Craig apartment. When doing so, she said, she had observed an off-white Cadillac parked in front of the building and the defendant standing several feet from Mrs. Button. She also testified that she had seen Mrs. Button a short time later when she returned to the witness's apartment with part of her clothing in her hand. Mrs. Button used her phone immediately to call the police and her employer.

The only testimony offered in behalf of the defendant was that of William Moss, the payroll manager of General Iron Industries, 2439 North Leavitt Street, Chicago. The witness identified a time card for Henry Hopkins as a time card of his company. It indicated that on October 8 Henry Hopkins had punched in at 1:00 P.M. and had punched

out at 10:00 P.M. On cross-examination the witness testified that he had not seen the defendant at work on October 8, 1968, and that he was not employed at the same General Iron Industries plant as the one where the defendant ostensibly was employed. The apparent purpose of the testimony of this witness was to rebut the testimony of Special Agent Sizemore that he had seen the defendant at 6:00 P.M. on October 8.

There was a stipulation into evidence that the defendant had $200 in a savings account on October 8, 1968. The evidence was offered by the defendant to show an absence of motive to commit the robbery.

On this appeal, three claims of error are made. The first is that the indictment under which the defendant was prosecuted was based only on testimony of a police officer, the complaining witness not having appeared before the grand jury. Since the officer's account of the attack on Mrs. Button was hearsay, it is argued, the indictment based solely upon such testimony was invalid under *People v. Duncan, 261 Ill. 339.* There it was said "that courts will not inquire into proceedings before the grand jury for the purpose of determining whether the evidence heard by that body was sufficient to support the indictment, unless all the witnesses were incompetent or all the testimony upon which the indictment was found was incompetent." 261 Ill. at 343.

This contention is, however, founded on a misapprehension of the term "incompetent testimony," and is without merit. In *People v. Jones, 19 Ill.2d 37,* this court reversed an affirmance by the appellate court of a trial court judgment which had allowed the defendant's motion to quash an indictment. The trial court had "ruled that since [the] evidence was hearsay, there was no competent evidence before the grand jury and entered an order quashing the indictments." (19 Ill.2d at 40.) In reversing it was held that " 'incompetent testimony' before a grand jury is only that testimony given by a witness disqualified

by law (such as complete mental derangement); and, therefore, if the witness is competent, his testimony before the grand jury is competent." 19 Ill.2d at 42. This court also noted that in *Costello v. United States, 350 U.S. 359, 100 L. Ed. 397, 76 S. Ct. 406,* the Supreme Court had upheld the constitutionality of an indictment based solely on hearsay, saying that no Federal constitutional provision was violated.

The defendant next attacks his identification by the complaining witness as the product of suggestive police identification procedures. The record of the pretrial hearing on the defendant's unsuccessful motion to suppress identification shows that the defendant was arrested on October 25, 1968, on a charge unrelated to the crimes against Carol Button. At about 1:30 A.M. on October 26, 1968, he was placed in a lineup of six men and a photograph was taken. Carol Button did not view this lineup.

About a month later two detectives took the photograph to Mrs. Button's place of work, and she identified the defendant as her assailant. The testimony of Mrs. Button and the detective who was a witness was that the officers did nothing to suggest the defendant's identification and that her identification of him was immediate and positive. Approximately two weeks later, on December 20, 1968, she made an identification of the defendant when another lineup was conducted. At trial she testified to having made this identification, and identified the defendant in court as the man who had attacked her. At the hearing on the motion to suppress, Mrs. Button told of identifying the photographs.

The defendant attacks the showing of the lineup photograph to Mrs. Button, and cites the observation we made in *People v. Holiday, 47 Ill.2d 300, 307:* "We believe that photographic identification procedures ought not to be employed when the suspect is in custody and a line-up is otherwise feasible."

In *Holiday* the two witnesses to the crime had been shown individual photographs of the defendant. One of the witnesses was the murder victim's 16-year-old wife, who had seen a member of a street gang shoot her husband during an altercation between him and some members of the gang. The altercation took place at night, and she had observed her husband's assailant for only a few moments. The other witness had witnessed the shooting and he was shown the photograph just prior to his making an in-court identification of the defendant. Both witnesses testified to the earlier photographic viewing.

Prior to trial, the defendant moved to suppress these identifications, in part on the ground that the photographic procedures were so unduly suggestive as to deny him due process of law. The trial court denied the motion without an evidentiary hearing.

After a review of the identification evidence introduced at the trial, we vacated the judgment and remanded for a hearing on the admissibility of the witnesses' testimony in view of their identifications from photographs. In so doing, we observed: "*** we would not be justified in concluding, on the basis of the record before us, that the identification testimony was inadmissible. That determination must be based on the totality of the circumstances, some of which may not be in the record due to the absence of a hearing on the issue. Thus, while it appears probable that the identification procedures used with the two witnesses were impermissibly suggestive and conducive to mistaken identification, we cannot foreclose the possibility that further circumstances may be revealed which clearly establish that the identifications were not the result of the suggestive procedures." 47 Ill.2d at 311.

The facts in *Holiday* are obviously distinguishable from those here. In *Holiday* the witnesses had limited and fleeting opportunity to view the assailant in the nighttime shooting. There was no hearing given on the motion to suppress identification testimony. Here there was a hearing

conducted on the defendant's motion to suppress, at which it was shown that Mrs. Button had adequate opportunity to observe the defendant. The crimes were committed under conditions of good lighting and the victim observed the defendant for 10-15 minutes during their commission. One cannot accept the contention that her identification of the defendant was attributable to a suggestive police identification procedure.

We are not persuaded by the defendant's related contention that there was error because there was no counsel for the defendant present at the viewing of the photographs by the witnesses. This court considered and rejected the argument in *Holiday*.

Another contention of the defendant is that the sentences he received were excessive and that it was error to make his sentence for attempted rape run consecutively to his sentence for armed robbery. He bases the latter part of his contention on the fact that the prosecution had not recommended that the sentences be consecutive. He complains that theoretically, at least, he could remain in prison until 2084, well beyond his life expectancy. In any event, he says, he will not be eligible for parole on the robbery conviction until he will be 52 years old, and on the attempted rape sentence, he will not be eligible until he will be 59.

This court's approach to requests to reduce sentences was described in *People v. Taylor, 33 Ill.2d 417, 424.* We stated: "Such authority [to reduce sentences] should be applied with considerable caution and circumspection, for the trial judge ordinarily has a superior opportunity in the course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed than do the appellate tribunals."

The record here shows that the defendant had twice previously been convicted of rape and that only the year before the commission of the crimes involved in this

appeal had been paroled from the penitentiary, after having served 10 years of a 50-year sentence for rape. The only mitigating claim in the defendant's behalf was a statement by his attorney that the defendant had decently treated the woman who had borne him three children and that he had been a good father.

The crimes were serious offenses and when committing them the defendant showed a brutal readiness to kill his victim should resistance have been offered. The sentences are long, but considering all of the circumstances we cannot say they are inappropriate.

The claim that the fact that the prosecution did not recommend consecutive sentences allowed the trial judge to impose only concurrent sentences has no merit. Our relevant statute (Ill. Rev. Stat. 1969, ch. 38, par. 1—7(m)) confers the responsibility of sentencing upon the judge, not the prosecutor.

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*