(No. 50467

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. FRANKLIN CREQUE, Appellee.

*Opinion filed Oct. 6, 1978.—Rehearing denied Dec. 1, 1978.*

516

CLARK, J., dissenting.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Mary Ann Callum, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (John Thomas Moran, Assistant Public Defender, of counsel), for appellee.

Roosevelt Thomas and Akim Gursel, of Chicago, for *amicus curiae* the Cook County Bar Association.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

The defendant, Franklin Creque, was charged in Cook County with the March 13, 1977, aggravated battery and attempted murder of Martha Creque, his wife. At the conclusion of a March 31 preliminary hearing on these charges, the judge found no probable cause existed for the attempted murder charge, but did find probable cause to hold defendant for the aggravated battery (Ill. Rev. Stat. 1977, ch. 38, pars. 109—1 through 109—3). On April 11, a Cook County grand jury indicted defendant on both charges. The circuit court subsequently dismissed the indictment for attempted murder on due process grounds, the State appealed, and we allowed a joint motion to transfer that appeal to this court under Supreme Court Rule 302(b) (58 Ill. 2d 302(b)).

The State's sole witness at the preliminary hearing was the victim, Martha Creque. She testified that she was in the living room of her apartment when she heard someone attempting to break in the back door and that she ran to a bedroom and hid behind a door. Defendant, however, succeeded in breaking down the back door and found her in the bedroom. He beat her with his fists and then stabbed her three times in the neck and once in the chest, hand and arm. She testified that defendant's brother, who had also come into the bedroom, told defendant to "come on" and to "stop" and eventually persuaded defendant to quit. Both then ran out the door. Mrs. Creque was uncertain whether defendant's brother actually had to pull defendant away from her.

The State's Attorney's subsequent presentation to the grand jury involved only one witness, an investigating officer whose testimony was essentially a summary of the victim's earlier statements at the preliminary hearing. He did not indicate that defendant quit stabbing his wife when defendant's brother intervened.

The circuit court cited four reasons for its action in allowing defendant's motion to dismiss. First, it found that the prosecution failed to show a "compelling justification" for the use of only hearsay evidence in obtaining the indictment. The difficulty with that finding, of course, is that there is no requirement that the prosecutor meet a "compelling justification" standard before presenting hearsay evidence to the grand jury.

The Supreme Court held in *Costello v. United States* (1956), 350 U.S. 359, 100 L. Ed. 397, 76 S. Ct. 406, that an indictment may be based solely on hearsay. Speaking for the court, Mr. Justice Black rejected the contention that an indictment is open to challenge because only hearsay evidence was presented to the grand jury. "If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury." (350 U.S. 359, 363, 100 L. Ed. 397, 402, 76 S. Ct. 406, 408.) He also there noted: "Neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act. *** An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." (350 U.S. 359, 362-64, 100 L. Ed. 397, 401-03, 76 S. Ct. 406, 408-09.) The Supreme Court reaffirmed this rule in *United States v. Dionisio* (1973), 410 U.S. 1, 35 L. Ed. 2d 67, 93 S. Ct. 764, wherein it was stated: "A grand jury has broad investigative powers to determine whether a crime has been committed and who has committed it. The jurors may act on tips, rumors, evidence offered by the prosecu-

tor, or their own personal knowledge." (410 U.S. 1, 15, 35 L. Ed. 2d 67, 80, 93 S. Ct. 764, 772.) (See also *Branzburg v. Hayes* (1972), 408 U.S. 665, 701, 33 L. Ed. 2d 626, 651, 92 S. Ct. 2646, 2667.) And again, in *United States v. Calandra* (1974), 414 U.S. 338, 344-45, 38 L. Ed. 2d 561, 569, 94 S. Ct. 613, 618, the Supreme Court noted: "The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence ***." The Standards Relating to the Administration of Criminal Justice of the American Bar Association (The Prosecution Function, Standard 3.6 (1971)) state that a prosecutor should present to a grand jury only evidence which he believes admissible at trial. It recognizes, however, that "in appropriate cases the prosecutor may present witnesses to summarize admissible evidence available to him which he believes he will be able to present at trial."

This court has considered the question on numerous occasions. In *People v. Jones* (1960), 19 Ill. 2d 37, 41, the court examined earlier cases stating that "an indictment will not be quashed unless all the witnesses were incompetent or all the testimony upon which it was found was incompetent [citations] " and noted that "[t]he use of the word 'incompetent' with reference to both the witnesses and testimony before a grand jury is misleading." The court then explained that those cases should be interpreted to mean "that 'incompetent testimony' before a grand jury is only that testimony given by a witness disqualified by law (such as complete mental derangement); and, therefore, if the witness is competent, his testimony before the grand jury is competent." (19 Ill. 2d 37, 42.) Quoting *Costello* the court held that there was no bar to the return of a true bill based on hearsay evidence alone. The court

noted that the "law favors promptness in the dispatch of criminal business of the courts when in harmony with the effective protection of the rights of the accused and the interests of the public. The delay is great when an accused can assail an indictment on this ground [incompetent evidence] and cause the trial court to review all the evidence presented to the grand jury, as was done in this case. Such procedure adds nothing to the assurance of a fair trial to which the accused is entitled." (19 Ill. 2d 37, 43.) The principles of *People v. Jones* were reaffirmed in *People v. Hopkins* (1973), 53 Ill. 2d 452.

Professor Wigmore noted in his treatise on evidence:

> "Proceedings before a grand jury are both 'ex parte' and interlocutory; moreover, the grand jury only seeks for a 'probable cause'; hence, on all principles, the jury-trial rules of Evidence should not apply. Moreover, in point of policy, no rules should hamper their inquiries, nor need a presentment amounting only to probable cause be based on a system of rigid sifting of evidence ***." (1 Wigmore, Evidence sec. 4, at 21 (3d ed. (1940).)

We agree "on all principles" that the holdings of *Costello, Jones* and *Hopkins* apply the proper rule and are dispositive of the contention that an indictment may not be based on hearsay.

Secondly, the circuit judge stated that he dismissed the indictment because the prosecution did not affirmatively disclose to the grand jury the hearsay nature of its evidence. In support of this reasoning, defendant relies on *United States v. Estepa* (2d Cir. 1972), 471 F.2d 1132, and *United States v. Basurto* (9th Cir. 1974), 497 F.2d 781. Both cases have been readily distinguished by the courts, and the validity of their holdings has been questioned in light of subsequent Supreme Court cases (see *United States v. Marchand* (2d Cir. 1977), 564 F.2d 983, 1001 n.29, *cert. denied* (1978), 434 U.S. 1015, 54 L. Ed. 2d 760, 98 S. Ct. 732, re *Estepa,* and *United States v. Bracy* (9th Cir. 1977), 566 F.2d 649, 655, re *Basurto*), but

even assuming their continued vitality, neither supports the trial court's ruling. *Estepa* held that an indictment must be dismissed when the grand jury has been misled into thinking that it is hearing the direct evidence of an eyewitness when it is not. However, the court noted that " '[t]here is no affirmative duty to tell the grand jury *in haec verba* that it is listening to hearsay,' United States v. Malofsky, 388 F.2d 288, 289 (2d Cir.), cert. denied, 390 U.S. 1017, 88 S. Ct. 1273, 20 L. Ed. 2d 168 (1968) ***." (471 F.2d 1132, 1136.) In *Basurto,* the court merely held that due process is violated when a defendant must stand trial on an indictment which the government knows is based on material, perjured testimony, but the court noted that "no independent inquiry may be made to determine the kind of evidence considered by the grand jury in making its decision. Costello v. United States, 350 U.S. 359, 76 S. Ct. 406, 100 L. Ed. 397 (1956). To do so would further invade the independence of the grand jury. The holding reached by this court does not affect that established rule." 497 F.2d 781, 785.

Here, there clearly was no attempt to mislead the grand jury. Its members could not, in our judgment, have thought from the investigator's statements that he was relating his personal observations of the incident. (See *United States v. Beltram* (2d Cir. 1968), 388 F.2d 449, 451, *cert. denied* (1968), 390 U.S. 1017, 20 L. Ed. 2d 168, 88 S. Ct. 1273; 391 U.S. 955, 20 L. Ed. 2d 869, 88 S. Ct. 1860.) At the outset, he told the grand jury that he was the officer assigned to investigate the stabbing incident, and it is therefore quite apparent that his testimony was not direct evidence but information gathered by his investigation after the stabbing had occurred. The investigator's testimony was in response to a request to "summarize" what his investigative work had produced. Neither the prosecutor nor he represented the testimony as eyewitness testimony. Indeed, this is obvious

from the nature of the testimony itself; for example: "Her husband, Franklin, arrived at the back door; found it locked and subsequently broke the door down and searched the apartment for her and found her behind a door." Defendant cannot seriously contend that the grand jury mistook such testimony by the police officer assigned to investigate as an eyewitness account of what went on inside the apartment.

As a third reason for dismissing the indictment, the trial court noted that the prosecutor did not advise the grand jury that it had the power to secure the presence of the victim by subpoena. Again, of course, there is no requirement that he do so. The prosecutor presented acceptable evidence apparently sufficient to satisfy the grand jury that probable cause existed for the return of an indictment. The prosecutor is under no duty to present all the incriminating evidence he has, nor to inform the grand jurors of the existence of additional or more direct evidence. If the evidence presented was not sufficient to convince the grand jury that there was probable cause to charge the defendant, it, of course, would have voted a no true bill or inquired as to the existence of additional evidence. We note that the prosecutor did advise the grand jury of its right to subpoena anyone against whom the State might seek an indictment, thereby fulfilling his statutory duty (Ill. Rev. Stat. 1975, ch. 38, par. 112–4(b)).

The trial judge gave as his final reason for dismissing the indictment the fact that the prosecution did not advise the grand jury that a judge had previously found no probable cause to believe defendant had committed attempted murder. In addition, defendant contends that absent extraordinary circumstances the prosecution is barred by section 7 of article I of the Illinois Constitution of 1970 from obtaining an indictment from a grand jury after a no-probable-cause determination at a preliminary

hearing. This contention, however, was rejected in *People v. Kent* (1972), 54 Ill. 2d 161, wherein the court stated:

"In our opinion the language of the constitutional provision, as well as the history of its evolution, negates any thought that its purpose was to attach finality to a finding of no probable cause, or to establish mutually exclusive procedures so that grand jury proceedings would be barred if an accused had been discharged upon preliminary hearing." 54 Ill. 2d 161, 163-64.

As the court in *Kent* noted, the record of proceedings of the Sixth Illinois Constitutional Convention makes it quite clear that this provision was intended to permit the prosecutor to seek the indictment of one who has been previously discharged on a finding of no probable cause.

In his written statement of his findings and conclusions the trial judge indicated in his opinion that the combined effect of what he regarded as the State's errors necessitated dismissal of the indictment "in order to protect the integrity of the judicial process and upon the basis of fundamental fairness and due process." Neither he nor defendant, however, has called to our attention any authority requiring the State to inform grand jurors of a prior finding of no probable cause, or invalidating an indictment returned without knowledge that such a finding had been made.

In our judgment, unless the finding by the preliminary hearing judge of no probable cause is to preclude presentation to a grand jury of evidence of the same crime, which *Kent* holds it does not, the grand jury need not be apprised of that finding. We believe the prosecution acted properly by informing the grand jury of neither the preliminary finding of probable cause as to aggravated battery nor the finding of no probable cause as to attempted murder.

Defendant also contends that the investigator's failure to tell the grand jury that defendant stopped knifing the

victim when his brother told him to "come on" and to "stop" prejudiced him because such evidence shows that he lacked intent to kill. Although the viciousness of the attack as testified to by the victim produces considerable doubt as to any prejudice, we decline to make the substantive determination defendant seeks. A defendant may not challenge an indictment on the ground that it is not supported by adequate evidence. (*People v. Jones* (1960), 19 Ill. 2d 37.) Guilt or innocence is to be determined at trial.

Defendant claims that the indictment should be dismissed because the prosecutor did not instruct the grand jury as to the difference between aggravated battery and attempted murder. Defendant is entitled to a proper instruction at trial, but that requirement is not applicable at the accusatorial stage.

Lastly, defendant asserts a right to counsel and a right of cross-examination during grand jury proceedings. "A grand jury proceeding is not an adversary hearing in which the guilt or innocence of the accused is adjudicated. Rather, it is an *ex parte* investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person." (*United States v. Calandra* (1974), 414 U.S. 338, 343-44, 38 L. Ed. 2d 561, 569, 94 S. Ct. 613, 618.) Neither the defendant nor his counsel had a right to participate in grand jury proceedings except as provided by our statute (Ill. Rev. Stat. 1977, ch. 38, par. 112–4), which is not applicable here.

While in cases such as this there is some temptation to transform the grand jury proceedings into a "kind of preliminary trial" (*Costello v. United States* (1956), 350 U.S. 359, 363, 100 L. Ed. 397, 402, 76 S. Ct. 406, 408), the most important protection for the accused in our system of law is a fair trial itself. We recognize, of course, that a trial is inconvenient, time-consuming and expen-

sive—a burden not repaid by acquittal—but there appears little logic in adopting burdensome, costly and time-consuming grand jury procedures as a remedy. As the Supreme Court has put it: "Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *United States v. Dionisio* (1973), 410 U.S. 1, 17, 35 L. Ed. 2d 67, 81, 93 S. Ct. 764, 773.

Accordingly, the judgment of the circuit court of Cook County dismissing the indictment is reversed and the cause is remanded for further proceedings.

*Reversed and remanded.*

MR. JUSTICE CLARK, dissenting:

As I see it, the central issue in this case is whether the circuit court may dismiss an indictment obtained through the suppression of substantial evidence tending to negate the existence of an essential element of the offense charged. The majority's answer apparently is that the circuit court may not dismiss such an indictment, because prohibition of such prosecutorial tactics would unduly burden the administration of justice. I disagree. If the grand jury is to have any hope of fulfilling its "historic function" of protecting "citizens against unfounded criminal prosecutions" (*United States v. Calandra* (1974), 414 U.S. 338, 343, 38 L. Ed. 2d 561, 568, 94 S. Ct. 613, 617) courts ought not permit prosecutors to manipulate grand jurors through suppression of substantial exculpatory evidence.

The key to understanding the significance of the evidence suppressed in this case is that the indictment at issue here charged the defendant with the offense of attempted murder (Ill. Rev. Stat. 1977, ch. 38, pars. 8—4 (attempt), 9—1(a) (murder)), of which the intent to kill is an essential element. (See *People v. Harris* (1978), 72 Ill.

2d 16, 27.) The evidence suppressed might well have led the grand jurors to conclude, as had Judge Pompey, that there was not probable cause to believe that the defendant had intended to kill his wife.

It was not necessary to tell the grand jury that Judge Pompey had decided that there was not probable cause to believe that defendant had intended to kill his wife. Indeed, telling the grand jury what a judge thought about the evidence presented to them would have been improper and prejudicial, because it would have intruded upon the right of the grand jury independently to evaluate that evidence. However, the prosecutor's suppression of that part of the evidence which had led Judge Pompey to conclude that the intent to kill was lacking even more seriously intruded upon the independence of the grand jury. Suppression of that evidence was the functional equivalent of telling the grand jury that such evidence did not exist and that even though they were getting their facts "secondhand," they were getting all of the material facts then available. Less than the whole truth, however, is not the truth and no amount of philosophizing about the need for efficiency and speed in the administration of criminal justice can change an indictment based on half the truth into one based upon the whole truth. Acquittal is poor compensation for months of anxious uncertainty, for massive, and perhaps crushing legal expenses, for the loss of one's good name, and for the public humiliation of one's family. (See *People v. Sears* (1971), 49 Ill. 2d 14, 36.) The power to indict therefore is tantamount to the power to destroy, if its exercise is not tempered by a basic sense of justice and fair play.

This court has not, before now, given the prosecutor carte blanche with the grand jury. As recently as last year, in *Hughes v. Kiley* (1977), 67 Ill. 2d 261, 267, this court implicitly reaffirmed its commitment to providing a "pretrial examination of potential prosecutorial miscon-

duct before the grand jury." The court indicated by way of dicta (which at least the author intended be followed) that where a defendant clearly alleges a legal and factual basis for dismissal of an indictment so obtained, "[t] he court hearing the motion, having found such clear allegations to be present, may examine the record to determine whether the indictment should be dismissed." (67 Ill. 2d 261, 267.) The above-quoted statement was not a hypothetical application of some obscure new theory, but rather, was based upon substantial authority from this and other courts' decisions. (See *People v. Sears* (1971), 49 Ill. 2d 14, 34-36.) Both courts and the profession have recognized the wrongfulness of the prosecutorial conduct at issue here:

> "The prosecutor should disclose to the grand jury any evidence which he knows will tend to negate guilt." (ABA Standards, The Prosecution Function sec. 3.6(b) (1971).)

In *United States v. Estepa* (2d Cir. 1972), 471 F.2d 1132, the United States Court of Appeals for the Second Circuit· recognized this problem in a similar context. See also *United States v. Marchand* (2d Cir. 1977), 564 F.2d 983, 1001 n.29, *cert denied* (1978), 434 U.S. 1015, 54 L. Ed. 2d 760, 98 S. Ct. 732.

It is easy to reverse the dismissal of an indictment of a man accused of attempting to beat and stab his wife to death. (See, for example, the court's discussion of the "viciousness of the attack" as it bears upon the absence of prejudice in this case (72 Ill. 2d at 527).) But the relaxed attitude which the court displays toward prosecutorial misconduct before the grand jury may eventually permit the practices at issue here to permeate the administration of justice, further eroding an important protection against those few prosecutors who, from time to time, lose sight of the higher ideals they have sworn to uphold. I therefore respectfully dissent.