THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* PHILIP GREW, Defendant-Appellee.

First District (1st Division)  No. 78-562

Opinion filed March 19, 1979.—Rehearing denied April 23, 1979.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ann Callum, and Carol A. Kearney, Assistant State's Attorneys, of counsel), for the People.

Daniel W. Weil, of Winston & Strawn, of Chicago, for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Philip Grew (defendant) was indicted for intimidation and communicating with a witness. (Ill. Rev. Stat. 1977, ch. 38, pars. 12—6(a)(1) and 32—4(b).) After a hearing, the trial court granted defendant's motion to dismiss the indictment. The People have appealed.

The charges against defendant pertained to Levar Lewis, a prosecution witness in the trial of Ellis McInnis for the murder of Mark Gromer. Defendant was acquainted with both Lewis and McInnis. They had all worked at the same restaurant.

The motion to dismiss the indictment averred substantially that the defendant was entitled to a preliminary hearing and the conduct of the prosecutor which resulted in defendant's failure to receive such a hearing constituted a violation of due process; and also the conduct of the prosecutor interfered with defendant's first amendment rights.

The trial court held a lengthy evidentiary hearing upon the motion to dismiss. The trial court also made oral findings and filed a voluminous written opinion. The trial court found that the "totality of the facts" indicated a "clear abuse of the Grand Jury by the State's Attorney", an improper "denial of a preliminary hearing" and an "infringement of First Amendment Rights" and also a "denial of due process."

Thereafter, the State filed a written motion for reconsideration, rehearing and vacation of the order of dismissal. The motion was supported by a memorandum of fact and law and by an affidavit by Thomas J. McCarthy, an assistant State's Attorney who was assigned to prosecution of the case against McInnis. After hearing extensive argument of counsel, the trial court denied the State's motion.

In their brief in this court, the People contend that defendant had no constitutional right to a preliminary hearing but probable cause was determined by the grand jury and that the trial court erred when it found that the indictment had been obtained by prosecutorial misconduct. Defendant responds that the trial court had power to dismiss the indictment for prosecutorial misconduct and violation of defendant's right to due process of law and that defendant was denied that right; defendant was wrongfully denied his right to a preliminary hearing; the decision of the State to indict defendant directly was based upon constitutionally impermissible motives so that dismissal of the indictment was the appropriate remedy.

The transcript of the grand jury proceedings of September 9, 1977, shows that assistant State's Attorney Robert Fuenty appeared before the grand jury. He called assistant State's Attorney James J. McCarthy as his only witness. Mr. Fuenty advised the jurors that they had the right to subpoena and question any person against whom the State's Attorney was seeking an indictment. He stated the charges against the defendant and read the pertinent statutes to the jury.

Mr. McCarthy testified that Levar Lewis, whom he referred to as a material witness, had been asked by defendant if he intended to be a witness in the case against Ellis McInnis. Lewis had told Mr. McCarthy that the defendant stated he was working for McInnis' lawyer. Lewis also told Mr. McCarthy that defendant had said that he (Lewis) should watch his back and "* * * should not in fact testify against Ellis McInnis."

Mr. McCarthy told the grand jury that on August 26, 1977, Lewis claimed he was shot at by an unidentified male person. Mr. McCarthy stated that Lewis was in protective custody and that after Lewis had informed the State's Attorney of his conversation with defendant an arrest warrant was obtained for the defendant. Mr. McCarthy also testified that the defendant had turned himself in to the Chicago Police and was out on bond.

A juror asked Mr. McCarthy about the statement that the defendant had been working for McInnis' attorney. Mr. McCarthy replied that he had been unable to verify whether "* * * he was in fact working for them" although one of the attorneys had stated that he knew the defendant. When asked if the defendant had revealed whether he had been working for the attorney, Mr. McCarthy replied that the defendant had made no statement after his arrest. Finally, a juror asked if the man who fired the shots at Lewis had been arrested. Mr. McCarthy responded negatively, stating that Lewis was unable to identify the person who had shot at him.

Chester Slaughter, attorney for Ellis McInnis, and James McCarthy both testified at the hearing held by the trial court on the motion to quash

the indictment. Mr. Slaughter, the defense attorney in the McInnis trial, testified that he had been contacted by the defendant who had identified himself as a friend of Ellis McInnis. Mr. Slaughter stated that he subsequently met with defendant and they discussed the pending case against McInnis. Defendant told Mr. Slaughter that he knew individuals who had information which could be helpful to McInnis' defense. Mr. Slaughter also testified that he requested the defendant to introduce him to Levar Lewis whom defendant stated he knew. Mr. Slaughter testified that he had told the State's Attorney that defendant had assisted him in the preparation of the McInnis defense. He further testified that after receiving information from the State's Attorney's office that there was an arrest warrant outstanding for the defendant, he told Mr. McCarthy that he would surrender the defendant. Mr. Slaughter testified that he called the defendant at his parents' home in Michigan to tell him about the existence of the warrant.

On redirect examination Mr. Slaughter testified that defendant contacted him because of the conflicting reports contained in the newspapers concerning the murder and because of contradictory stories told by Lewis.

Assistant State's Attorney McCarthy's testimony was substantially the same before the grand jury and at the trial court hearing. However, he testified at the hearing that he had learned an arrest warrant had been outstanding for Lewis for violation of probation and that he had arranged to have Lewis' bond reduced to an individual bond as he was in protective custody. Mr. McCarthy further testified that after the defendant had been arrested and charged, Lewis had recanted his statements about the alleged threats made to him by the defendant. However, he stated that Lewis had subsequently reverted to his original story.

Mr. McCarthy also stated at the hearing that the decision to indict the defendant directly was due to the delay in holding the preliminary hearing. Mr. McCarthy testified that the delay was attributable to defendant whose father could not be present at the previously selected date for the preliminary hearing. He stated that he was not aware of any office policy which required that a preliminary hearing be held. He also testified that the true bill was voted and certified on Friday, September 9, 1977, but was not filed until the following Monday at which time defendant appeared and demanded a preliminary hearing.

The State's motion for reconsideration, rehearing and vacation of the dismissal order was accompanied by Mr. McCarthy's affidavit. The affidavit stated that at the time the grand jury returned the indictment Mr. McCarthy had no knowledge of any information negating the guilt of the

defendant; after the return of the indictment Lewis had recanted his charges against the defendant; Mr. McCarthy had interviewed Lewis in "*'*'*' an attempt to determine the validity of the indictment against * * *'" the defendant; on September 29, 1977, Lewis reverted to his original accusations against the defendant; and that at no time since August 20, 1977, up to and including the date of the affidavit, had Lewis ever told Mr. McCarthy that defendant did not threaten him.

The first contention of the People, regarding the necessity of a preliminary hearing under the Illinois Constitution presents a question of law. The Illinois Constitution of 1970, article I, section 7, provides:

> "No person shall be held to answer for a crime punishable by death or by imprisonment in the penitentiary unless either the initial charge has been brought by indictment of a grand jury or the person has been given a prompt preliminary hearing to establish probable cause."

The Illinois Supreme Court construed this section in *People v. Kent* (1972), 54 Ill. 2d 161, 163, 295 N.E.2d 710. The court held:

> "The constitutional reference to a right to a preliminary hearing is new. As we read the provision before us, it appears to be designed to insure that the existence of probable cause will be determined either by a grand jury or by a judge."

In *People v. Hendrix* (1973), 54 Ill. 2d 165, 295 N.E.2d 724, the defendant had been charged by a criminal complaint. He was brought before the circuit court which ordered that a preliminary hearing be held. No date was set for this hearing. On the next day the grand jury indicted the defendant. Defendant filed a motion to dismiss the indictment on the ground that he had been denied a preliminary hearing. The trial court granted defendant's motion. The Illinois Supreme Court reversed the trial court and held that there had been no constitutional violation because of lack of a preliminary hearing. (*Hendrix*, 54 Ill. 2d 165, 169.) See *People v. Howell* (1975), 60 Ill. 2d 117, 119, 324 N.E.2d 403, citing *Kent* and *Hendrix* as authority for the statement that a defendant in a felony case "must be afforded a prompt probable cause determination of the validity of the charge either at a preliminary hearing or by an indictment by a grand jury."

Defendant also urges that the denial of a preliminary hearing violated his right to due process of law. However, in *People v. Redmond* (1977), 67 Ill. 2d 242, 246, 367 N.E.2d 703, the Illinois Supreme Court held:

> "The provision of the fifth amendment requiring indictment by a grand jury is not applicable to State criminal proceedings. (*Hurtado v. California*, 110 U.S. 516, 28 L. Ed. 232, 4 S. Ct. 111 & 292; *Morford v. Hocker* (9th Cir. 1968), 394 F.2d 169.) Too, a State

may, consistent with due process, dispense with the preliminary hearing procedure and authorize the prosecutor to initiate the criminal proceeding directly. *Lem Woon v. Oregon,* 229 U.S. 586, 57 L. Ed. 1340, 33 S. Ct. 783."

■■ We conclude that the first contention of the People is well taken. Defendant had no constitutional right to a preliminary hearing for determination of probable cause.

The People next contend that the trial court erred when it dismissed the indictment on the basis of various findings of prosecutorial misconduct. The Code of Criminal Procedure of 1963 codified the various grounds then recognized upon which a trial court was authorized to dismiss an indictment. (Ill. Rev. Stat. 1977, ch. 38, par. 114—1(a).) None of these specified grounds is applicable here. However, in *People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244, the supreme court held that trial courts had authority to dismiss an indictment without trial predicated upon a denial of due process of law to a defendant.

But before granting a dismissal on due process grounds most careful consideration must be given by the trial court and by this court to the language of *Lawson,* 67 Ill. 2d 449, 457, in which the Illinois Supreme Court cautions:

"Clearly, our holding must not be construed as an invitation to disregard statutory provisions on dismissal. The courts must proceed with restraint and ascertain preindictment denial of due process only with certainty."

Defendant urges that prosecutorial abuse of the grand jury was manifested by the improper use of hearsay; the dual role of assistant State's Attorney McCarthy as the sole witness before the grand jury and as prosecutor of the McInnis case; attempts by the State to mislead the grand jury; and knowledge on the part of Mr. McCarthy as State's Attorney that Lewis had recanted his testimony that defendant had threatened him.

Defendant admits in his brief before this court that the use of hearsay before the grand jury is appropriate but urges us to consider *People v. Bissonnette* (1974), 20 Ill. App. 3d 970, 313 N.E.2d 646. In *Bissonnette,* defendant filed a motion to quash an indictment for deviate sexual assault on the ground that the grand jury heard no competent evidence. The sole testimony presented to the grand jury was that of an assistant State's Attorney. In holding that the hearsay testimony of the State's Attorney was competent, the court stated (*Bissonnette,* 20 Ill. App. 3d 970, 974):

"The fact he was called as an investigating witness and was also on the staff of the State's Attorney does not render ·him legally incompetent, nor does it constitute an improper attempt to influence the grand jury. (*People v. Strauch,* 247 Ill. 220, 93 N.E.

126 (1910).) While this practice could be subject to abuse and is not encouraged, we cannot say that any of defendant's statutory or constitutional rights were offended."

*Bissonnette* is also relied upon by the State to support the contention that Mr. McCarthy's testimony before the grand jury was proper.

Defendant would have this court find that the testimony of State's Attorney McCarthy constituted an abuse and violated defendant's constitutional rights so as to constitute an impermissible use of hearsay. Defendant cites Mr. McCarthy's "interest" in the indictment as prosecutor of the McInnis case, to support the allegation of abuse. Defendant contends that Mr. McCarthy's testimony was calculated to mislead the grand jury in order to obtain the indictment against defendant. However, defendant states in his brief before this court that the "prosecutor did not really lie to the Grand Jury" and that "most of what he told them was technically true." Defendant objects to the statements made by Mr. McCarthy that Levar Lewis had been shot at and that Lewis did not see the person who had fired the shots. However, the record is uncontradicted that Mr. McCarthy actually believed this statement to be true.

Defendant objects to the testimony which "gave the jurors the impression that Grew [defendant] was unwilling to make any statement after he was arrested." The record shows that defendant's counsel would not make defendant available for a statement unless the arrest warrant was dropped. This demonstrates that the statement of Mr. McCarthy to the grand jury was literally and completely true. Defendant also objects to the testimony of Mr. McCarthy that he had been unable to verify if defendant had been working for McInnis' lawyer. Defendant stresses that Mr. McCarthy had been given this information prior to his appearance before the grand jury. This fact may well have been true. But, as above shown, Mr. McCarthy did not deny this fact before the grand jury. He simply stated that he did not have an opportunity to verify that the defendant had actually been working for the attorney. The literal truth of this statement by Mr. McCarthy is uncontradicted.

■■ It is logical to conclude that Mr. McCarthy was interested in the indictment of the defendant. As demonstrated by the record, he believed with good reason that two material witnesses in the murder case he was to prosecute had been intimidated and assaulted. It does not necessarily follow that his interest was abused or was calculated to deprive the defendant of his due process rights. This court is impelled to conclude that the testimony presented to the grand jury was not a vehicle of prosecutorial abuse and did not violate defendant's constitutional rights.

Defendant also relies on *People v. Creque* (1978), 72 Ill. 2d 515, 382

N.E.2d 793, to support his contention that the use of the hearsay testimony of assistant State's Attorney McCarthy was improper. In *Creque*, the trial judge dismissed an indictment because, among other grounds, the prosecutor had failed to demonstrate a "compelling justification" for using only hearsay evidence before the grand jury. The Illinois Supreme Court in reversing the trial court held (*Creque*, 72 Ill. 2d 515, 521):

> "The difficulty with that finding, of course, is that there is no requirement that the prosecutor meet a 'compelling justification' standard before presenting hearsay evidence to the grand jury."

Defendant, in the case before us, recognizes that the *Creque* trial court was reversed on its "compelling justification" argument by the supreme court but stresses that the supreme court found "* * * there clearly was no attempt to mislead the grand jury" (*Creque*, 72 Ill. 2d 515, 524). As above indicated, based on the entire record before us, we find that there was no attempt by the prosecution to mislead the grand jury.

Finally, defendant contends that the indictment was returned as a result of prosecutorial abuse and improper conduct before the grand jury because the State's Attorney knew prior thereto that Levar Lewis had recanted his testimony concerning the alleged threats made by defendant. The record before us does not support this contention. At the hearing on the motion to quash the indictment, State's Attorney McCarthy testified that after defendant was arrested and charged, Lewis recanted his original statement. He added that Lewis, finally, did revert to his original story. This statement is ambiguous because the word "charged" may refer either to the original criminal complaint against defendant or to the indictment. The affidavit filed by Mr. McCarthy after the hearing on the motion to dismiss clarifies this situation. It states that the recantation by Levar Lewis occurred after return of the indictment. We find no element of prosecutorial abuse in this regard.

It would be improper for this court to attempt to pass judgment on the truth or veracity of the statements made by Levar Lewis. The Illinois Supreme Court pointed out in *Creque*, 72 Ill. 2d 515, 527:

> "A defendant may not challenge an indictment on the ground that it is not supported by adequate evidence. (*People v. Jones* (1960), 19 Ill. 2d 37.) Guilt or innocence is to be determined at trial."

We are unable to find from the record before us that this defendant has proved "with certainty" (*Lawson*, 67 Ill. 2d 449, 457) that he was denied any right associated with due process of law. On the contrary we conclude that there was no violation of defendant's due process or other constitutional rights in the preindictment procedure, in presentation of the case to the grand jury or in the return of the indictment. The order dismissing the indictment is therefore reversed and the cause is remanded

to the trial court with directions that further proceedings be held consistent with this opinion.

Order reversed; cause remanded with directions.

McGLOON and CAMPBELL, JJ., concur.