THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANDRE JACKSON, Defendant-Appellant.

(No. 58531;

First District (4th Division)—April 24, 1974.

James J. Doherty, Public Defender, of Chicago (William C. North, John T. Moran, Jr., and Bernard L. Schwartz, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, Mariann Twist, and Nicholas Iavarone, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendant, Andre Jackson, was charged in an indictment with the murder of William Adamore, the armed robberies of Shirlene Armour and Robert Bell, aggravated battery causing great bodily harm to Robert Bell, aggravated battery using a deadly weapon. He was found guilty of all the charges after a jury trial. The trial court sentenced him to a term of not less than 30 nor more than 60 years on the murder charge, 10 to 15 years on the armed robbery of Shirlene Armour and 10 to 15 years on the armed robbery of Robert Bell, and 5 to 10 years for aggravated battery causing great bodily harm. All of the sentences are to run concurrently.

The defendant contends on appeal that (1) his right to a fair trial was denied by certain prosecutorial misconduct, (2) the common law record improperly reflects that he was sentenced for aggravated battery

using a deadly weapon, and (3) his sentence for aggravated battery causing serious bodily harm is excessive.

The evidence shows that at about 11:15 P.M. on August 6, 1970, Barbara Barksdale, the manager, and Shirlene Armour, her sister and owner of a tavern at 924 West 69th Street were in the premises. Two of their customers, William Adamore and Robert Bell, were seated at the bar. The tavern was well lit.

Two men entered and ordered a beer. Shirlene testified that one of the men, whom she identified at trial as the defendant, asked her name and told her in return that his name was John Frederick. She conversed with him and shortly thereafter went to the window to change a record album. When she turned around the defendant had a gun pointed at her and demanded all the money in a drawer. She complied. The other man robbed the patrons. The defendant then told Robert Bell he was "smart" and that he was going to teach him a lesson. Defendant struck Bell in the jaw with his gun and it fired, wounding him (Bell) in the shoulder. The bullet passed through Bell's shoulder and struck William Adamore in the head, killing him. The defendant turned and said "I'm sorry it had to happen like this, but I didn't have a choice." He and the other man then backed out the door and Shirlene immediately called the police.

The two women gave a description of the defendant to the police. They both noted a scar on his left cheek near the chin. In addition to Shirlene Armour, both Miss Barksdale and Robert Bell identified the defendant at trial, and their testimony substantially corroborated that given by Mrs. Armour.

Willie Lee Wilson testified that the defendant was at her home on August 6, 1970, from about 6:30 P.M. until about 1 or 2 o'clock in the morning. The defendant took the stand in his own defense and also testified that he was with Willie Lee for the period of time stated by her. On cross-examination he admitted that he had also used the name of John Frederick. In rebuttal Officer Ivory Hampton testified that when he informed Willie Lee Wilson, during the investigation, that the defendant stated he had been with her on August 6 she denied it and told him she had been at home with her husband and children that evening.

The defendant first contends that it was reversible error for the trial court to deny his motion for a mistrial where the prosecution introduced evidence which showed his involvement in previous unrelated crimes.

Objection is first made to certain testimony given by Officer Ivory Hampton. He testified that he and another officer received a call that there was a robbery in progress at the tavern and they went directly to

the scene. The following day, August 7, 1970, Shirlene Armour and Barbara Barksdale were requested to come to the police station and did so. Officer Hampton then was asked by the prosecutor:

"Q. After they came in, would you tell the ladies and gentlemen of the jury what, if anything, occurred?

A. They came in. We gave them the books of the male, Negroes robbery and sex offenders."

An objection to that testimony was made by the defense counsel and sustained by the judge who immediately instructed the jury to disregard the answer. We note here that Hampton then testified that defendant's picture was not found in the books by the two women and no identification was made at the time. His subsequent testimony revealed that it was at the next meeting between him and the women on August 9 that the identification of a photograph of the defendant was made from different books.

The other testimony on which defendant bases his contention of reversible error was given by Sergeant Eli Harris during his questioning by the prosecution. Harris testified that he was supervisor of the unit to which Officer Hampton was assigned. He was then asked by the prosecutor:

"Q. Calling your attention to August 9th and 10th, did you have occasion to become assigned or involved in a matter with Investigator Hampton?

A. Yes, sir.

Q. Tell the ladies and gentlemen of the jury how you first became involved in the matter with Investigator Hampton.

A. Well, on that date, I was working the day shift and I came into work that morning. And on my desk was a note from Hampton with a picture and an arrest record.

MR. MISSIRLIAN: [Assistant Public Defender] Objection, Your Honor.

THE COURT: Sustained.

MR. DRISCOLL: [Assistant State's Attorney] Q. What did you find on your desk?

A. What I found on my desk, I found a note on my desk, I found a note on my desk left by Investigator Hampton.

Q. Was anything attached to the note?

A. Yes, sir, it was.

Q. What was attached to the note?

A. Copy of an arrest record and a photograph.

MR. MISSIRLIAN: Objection.

THE COURT: Sustain the objection.

MR. DRISCOLL: Q. Did you have occasion to recognize the person in the photograph?

A. Yes, sir.

Q. And will you look around the courtroom, Sergeant, and tell the ladies and gentlemen if you see anyone here in court who was portrayed in the photograph?

A. Yes, sir.

Q. Point out whom, if anyone, you see?

A. Sitting right next to the attorney there.

MR. DRISCOLL: Indicating for the record the defendant in this cause, Andrew Jackson."

Sergeant Harris then stated he had known the defendant for approximately 7 to 10 years by the name of Sonny, and that he knew the general area where he could be found. After seeing the photograph Harris circled a four-block area a few times and recognized the defendant among a group of persons. He then testified that he searched the defendant and took him to the police station where he turned him over to Officer Hampton.

On cross-examination Sergeant Harris testified that he did not question the defendant at any time or hear him make a statement. He was asked if he ever went to where the defendant lived or resided and he said he did not. On redirect the following occurred:

"Q. Sergeant, you say you knew the defendant for six or seven years, I believe you said?

A. At least.

Q. And did you know him from your duties as a police officer?

A. I had known him from working as a police officer."

Defense counsel made a motion for a mistrial and it was denied.

Based on certain portions of the above quoted testimony of Officer Hampton and Sergeant Harris, the defendant maintains that the prosecution introduced evidence that the defendant committed other criminal offenses which had no connection with or relation to the prosecution of the crime charged, and that such evidence was incompetent and prejudicial. It is argued that repeatedly and consciously subjecting the jury to such testimony rendered the trial unfair and denied the defendant due process.

We have carefully reviewed the record and find that the testimony does not compel reversal. In regard to Officer Hampton's statement about the "male, negroes robbery and sex offenders" photograph books shown to the victims on August 7, an objection was made and sustained and the jury was immediately instructed to disregard the answer given. We find no evidence that the testimony was intentionally elicited by the prosecu-

tor. More fundamentally, as we pointed out, the jury was aware that the books referred to did not contain the defendant's picture. Thus there was nothing to prejudicially connect the defendant at that time with the remarks of Officer Hampton and no inference of prior crimes could legitimately be drawn.

■■ As to the testimony of Sergeant Harris that both a photograph and an arrest record were attached to the note left for him, an objection was made and sustained. The jury was instructed before deliberating that they were to disregard such testimony. Again we find no intentional attempt by the State to introduce it. The defendant emphasizes that, after the judge had sustained a first objection to the Sergeant's answer about an arrest record being attached to the note on his desk, the prosecutor again asked, "Was anything attached to the note?" and the same response was given, and again an objection was sustained. But, as the State points out, the prosecutor apparently assumed that the experienced police officer would omit any reference to the arrest record the second time and mention only the photograph, which was the real subject of his inquiry, as revealed by his subsequent questions. Although in retrospect the prosecutor might have phrased the question more tactfully, we are not persuaded that he intentionally elicited the response.

After closely scrutinizing the trial record, we find it unnecessary to elaborate further here about any of the testimony of Sergeant Harris complained of by the defendant. It is our opinion that if indeed there was any error committed by virtue of his testimony, it did not reasonably affect the verdict of the jury. As we stated in *People v. Olivier*, 3 Ill.App.3d 872, 878, 279 N.E.2d 363, 367:

> "It is not the policy of this court to reverse a judgment merely because error has been committed unless it appears that real justice has been denied or that the finding of guilty may have resulted from such error. [Citations.]"

Here the defendant's guilt was based on the testimony of three eyewitnesses who had ample opportunity to observe the defendant face to face and who positively identified him as the person who robbed them and shot Robert Bell. Without a doubt *that* was the evidence that convinced the jury of defendant's guilt and not the inadvertent answers given by the policemen.

■■ It is next contended that the defendant was denied a fair trial by certain prejudicial remarks of the Assistant State's Attorney in his closing argument to the jury. This is based first on the prosecutor's argument that "as soon as [the defendant] got out of that tavern, he would get rid of that gun and the proceeds of the robbery as quick as he can. That is the reason three days later, when this [sic] apartment is searched,

nothing was found." It is claimed that for the prosecutor to argue that the absence of evidence of proceeds of the crime supports guilt is to shift the burden of proof to the defendant. The record discloses that defense counsel made no objection to this argument at trial and therefore any contention here that it constitutes error is deemed waived. (*People v. Hudson*, 46 Ill.2d 177, 263 N.E.2d 473.) The same principle of waiver precludes defendant from asserting error in the prosecutor's rebuttal closing argument to the effect that "[b]y a verdict of guilty, ladies and gentlemen, you can tell Andrew Jackson, and everybody like him out there, that they can't go around and rob people, and beat people, and shoot people at their whim." This line of argument is claimed to have impressed the jury that the defendant is a dangerous person who should be kept out of the community and that they should convict him regardless of his guilt in the instant case.

■■ Even had defense counsel felt it necessary to object to these arguments in the trial court we perceive no error. In conducting his cross-examination he dwelt on the fact that no weapon was ever recovered nor were any proceeds found, apparently to strengthen defendant's alibi. The prosecutor had a perfect right to answer this strategy and state the obvious—that the defendant could very well have disposed of the gun and proceeds in the 3-day interval between the commission of the crimes and his arrest. We interpret the other remarks of the prosecutor as merely urging the jury to fearlessly administer the law by convicting the defendant, whom the evidence showed to be guilty. (See *People v. Halteman*, 10 Ill.2d 74, 139 N.E. 286.) They cannot be likened to the outrageous comments made by the prosecutor in *People v. Garreau*, 27 Ill.2d 388, 189 N.E.2d 287, a rape prosecution, cited by defendant.

■■ The defendant also complains of the argument by the prosecutor, objected to at trial, that the State's witnesses had no reason to lie when they identified the defendant, and that the defendant had a greater interest in or motive for lying. Objection to this argument is without merit. It is not error to point out possible sources of a witness' bias (*People v. Winstead*, 90 Ill.App.2d 167, 234 N.E.2d 175), and the prosecutor may even call a witness false, if in doing so he relies on the evidence and the inferences from it to support his conclusion (*People v. Sinclair*, 27 Ill.2d 505, 190 N.E.2d 298; *People v. Weaver*, 18 Ill.2d 108, 163 N.E.2d 483). Objection was also made at trial to the remark by the prosecutor: "If you believe Andrew Jackson wasn't there, let him walk out and God help the next person that comes in contact with him." We note that similar remarks have been found not to constitute error (see *People v. Wright*, 27 Ill.2d 497, 190 N.E.2d 287; *People v. Brown*, 16 Ill.2d 482, 158 N.E.2d 579), and in any event the court by promptly

sustaining defendant's objection prevented any misunderstanding of this argument by the jury (*People v. Dismuke*, 3 Ill.App.3d 553, 278 N.E.2d 152). As we stated earlier, the cumulation of eyewitness testimony establishing defendant's guilt was so overwhelming that the jury could not have returned any verdict but that of guilty. And

> "[a]lthough a prosecutor's remarks may be subject to criticism, unless they constitute a material factor in the conviction or are such that prejudice to the defendant is their probable result, the verdict will not be disturbed." *People v. Weaver*, 8 Ill.App.3d 299, 307, 290 N.E.2d 691, 697.

■■ It is next pointed out that the report of proceedings indicates that the court did not sentence the defendant for aggravated battery using a deadly weapon, but the common-law record reflects the imposition of such a sentence. Since the defendant here could not have been sentenced for the simultaneous acts of aggravated battery causing great bodily harm and aggravated battery using a deadly weapon in regard to the same victim (see *People v. Cox*, 53 Ill.2d 101, 291 N.E.2d 1), the common-law record is, as conceded by the State, in error. A *nunc pro tunc* order must be issued to correct the discrepancy and the cause will be remanded for that purpose.

■■ The defendant finally urges that his minimum sentence for aggravated battery causing great bodily harm be reduced to conform to the mandates of the new Unified Code of Corrections, which became effective on January 1, 1973. The State rightly concedes that the present case, since it is on appeal, is subject to the provisions of the Code. (*People v. Harvey*, 53 Ill.2d 585, 294 N.E.2d 269.) Under the Code aggravated battery is a Class 3 felony (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 12—4 (d)), for which the penalty is 1 to 10 years and for which the minimum sentence may not exceed one-third of the maximum (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1). Since the defendant was sentenced to a maximum of 10 years on the aggravated battery charge, his minimum sentence on that charge must be reduced to 3 years and 4 months. The cause is remanded to the Circuit Court with directions to issue an amended *mittimus*, reflecting this modification in the sentence.

Judgment affirmed, sentence to be modified, cause remanded with directions.

ADESKO, P. J., and JOHNSON, J., concur.