THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN R. WIRTH, Defendant-Appellant.

First District (1st Division)   No. 78-76

Opinion filed October 1, 1979.

254

James J. Doherty, Public Defender, of Chicago (Mary T. Woodward and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and Bruce W. Lester, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After trial by jury John R. Wirth (defendant) was found guilty of burglary and sentenced from 4 to 12 years. In his appeal to this court, he contends the prosecution failed to overcome his affirmative defense of intoxication; the trial court unfairly refused to instruct the jury on defendant's theory; evidence of a bond forfeiture by defendant was improperly admitted to prove flight; the prosecutor indulged in unfair argument and defendant was denied due process of law when the trial court refused to dismiss the indictment which was secured as a result of abuse of the grand jury.

Maureen Moran testified that on the early evening of August 1, 1975, she, her husband and two children were at home. Through the window she saw a young neighbor talking to a man she later identified as the defendant. The boy pointed at her home. She heard pounding on the front door. She opened the door and saw the defendant. He kicked at the door and asked her repeatedly where her "old man" was. She screamed for her husband. She ordered the defendant out and closed the door. She heard kicking sounds again and defendant reentered. He said he would kill her and she picked up a chair for protection. She did not notice that defendant smelled of alcohol.

Thomas Moran heard his wife screaming. He ran to her assistance and physically pushed defendant out of the house off the porch and into

some bushes. Moran told his wife to call the police. Defendant again attempted to enter the house and wrestled with Thomas Moran. The police arrived and defendant was handcuffed and removed.

One of the arresting officers testified that he responded to a police call. He saw defendant being held down on the grass. Although defendant was handcuffed he kicked the officer in the back of the head while in the squad car. This officer testified that he smelled alcohol on defendant's breath. In his opinion, defendant had been drinking. The officer so stated in his police report.

Alexander Kreydich testified for defendant. Kreydich had known and worked with defendant for some 5 or 6 years. He saw defendant on the afternoon of the day in question. Defendant was "upset." Defendant told him a certain police officer had killed defendant's friend and he would like "to get hold of" the officer. The defendant then went to visit a friend named Judy Lipuma. Early that evening Kreydich came to the place when defendant was being arrested. He noticed alcohol on defendant's breath. Defendant's speech was not "really coherent" and defendant slurred his words. Defendant staggered when he was taken from the squad car and put into a patrol wagon. At the police station defendant screamed and hollered. The witness thought the defendant "was drunk" or "bombed."

Judy Lipuma, 18 years old, next-door neighbor of the Moran family, had known defendant for 5 years and "dated" him steadily for about 2 months. She saw defendant during the early morning hours of August 1, 1975. Defendant was crying and "very upset" about the death of his friend. Early that afternoon she saw defendant drink almost a whole bottle of warm gin in about a half hour. This did not make the defendant sick. Defendant said he would "get" Officer Van Cura who had killed his friend. He used foul language concerning this officer. In her opinion, defendant was drunk that afternoon. He rocked back and forth and slurred his words badly. She saw defendant go next door to the Moran home and saw him on the front lawn. She ran over and helped to hold him down. She smelled alcohol on his breath. Other testimony and trial incidents will be described as necessary.

## I.

¶1 On the issue of intoxication, the Criminal Code of Illinois provides that "[a] person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition * * * (a) [n]egatives the existence of a mental state which is an element of the offense; * * *." (Ill. Rev. Stat. 1977, ch. 38, par. 6—3.) It has been authoritatively held in Illinois that "voluntary drunkenness is no excuse for the perpetration of a criminal act; it may be used to negative intent and

malice only where intoxication is so extreme that it entirely suspends the power of reason." *People v. Huggy* (1974), 19 Ill. App. 3d 247, 252, 311 N.E.2d 355, and cases there cited. See also *People v. Remon* (1976), 40 Ill. App. 3d 337, 340, 352 N.E.2d 374, and *People v. Heiple* (1975), 29 Ill. App. 3d 452, 453, 330 N.E.2d 556.

■ The crime of burglary requires the act of entering or remaining in a building or vehicle together with "intent to commit therein a felony or theft." (Ill. Rev. Stat. 1977, ch. 38, par. 19—1(a).) In this regard, burglary differs from other crimes such as robbery which "does not require specific intent." (See *People v. Banks* (1979), 75 Ill. 2d 383, 392, 388 N.E.2d 1244.) Consequently, the issue in the case before us is not the presence or absence of intoxication "but whether in the light of all the evidence relating to his intoxication he [defendant] had the requisite mental state * * *" to commit the crime with which he was charged. (*Huggy*, 19 Ill. App. 3d 247, 252.) The law of Illinois has determined and consistently holds that "the question of whether or not the defendant was so intoxicated as to be incapable of forming the requisite intent to commit a crime is a question * * * for the trier of fact." *People v. Fields* (1978), 56 Ill. App. 3d 1068, 1069, 372 N.E.2d 980.

■ In the instant case, there was evidence to show a lack of intoxication. On the other hand there was evidence to show that defendant had been drinking. There is also evidence which might well lead to the inference that defendant purposely and forcefully entered the Moran home with intention to obtain physical revenge against the police officer whom defendant considered responsible for the death of defendant's friend. In this situation, a question of credibility arose which it was the duty of the jury to answer. We cannot say that their verdict is so improbable or that the evidence in support of the verdict is so unsatisfactory as to justify a reasonable doubt of guilt and reversal of the judgment on this ground. *People v. Benedik* (1974), 56 Ill. 2d 306, 310, 307 N.E.2d 382.

## II.

Defendant attempted to raise an issue of "automatism" in an effort to prove that his conduct was involuntary. Defendant tendered, and the trial court rejected, a specific instruction on this defense:

> "A person shows automatism or involuntary behavior and is not criminally responsible for his conduct if at the time of the conduct he lacks substantial capacity to either appreciate the criminality of the conduct or to conform his conduct to the requirements of the law."

This instruction was not taken from Illinois Pattern Jury Instructions, Criminal. The trial court did instruct the jury on the defense of voluntary intoxication. (Illinois Pattern Jury Instructions, Criminal, No. 24.02 (1968)

(hereinafter cited as IPI Criminal).) The trial court also gave the jury an instruction (IPI Criminal No. 4.14) defining a voluntary act as follows:

"A material element of every crime is a voluntary act, which includes an omission to perform a duty which the law imposes on the offender and which he is physically capable of performing."

In support of his theory defendant offered the expert testimony of Dr. Jerome Katz, a qualified psychiatrist. The expert testified in response to a hypothetical question propounded by counsel for defendant. The expert had never known or examined the defendant and testified he knew nothing about the conduct of the defendant but he was addressing himself "only to the hypothetical." The witness stated that his "impression" was that the hypothetical person "probably did have an acute organic brain syndrome" and could "conceivably" have been suffering from hypoglycemia at that time; might have been suffering "from acute emotional disturbance" and was markedly intoxicated. On cross-examination the doctor testified it was possible the defendant was not suffering from hypoglycemia at the time. Webster's Seventh New Collegiate Dictionary 410 (1967) defines "hypoglycemia" as an "abnormal decrease of sugar in the blood."

■ Defendant cites *People v. Grant* (1977), 46 Ill. App. 3d 125, 360 N.E.2d 809. That case involved a prosecution for aggravated battery. In its opinion the court stated, "The defendant suffers from an illness known as psychomotor epilepsy." (*Grant*, 46 Ill. App. 3d 125, 127.) The appellate court reversed the conviction. In *People v. Grant* (1978), 71 Ill. 2d 551, 377 N.E.2d 4, the supreme court reversed the appellate court and held that the failure of the trial court to instruct the jury *sua sponte* on the defense of involuntary conduct did not require a reversal of the conviction. We find the situation in *Grant* to be different from the instant case. In *Grant*, the defendant was suffering from a physical disease. In the instant case, the defendant had no disease and his only problem was one of voluntary intoxication. In the instant case, there is no actual evidence of any organic impairment of defendant at any time. The defendant's evidence consists simply of hypothetical speculation by a psychiatrist, clearly different from specific and positive testimony. There is no evidence in this record that hypoglycemia might or could cause involuntary criminal behavior. We accordingly reject defendant's contention.

## III.

Defendant made a motion *in limine* to prevent introduction in evidence of a bond forfeiture warrant that had been issued against him after his failure to appear when the instant case had been called for trial. Defendant testified in support of this motion that he had failed to appear for trial on October 9, 1975, and did not appear until he was arrested on

March 5, 1976. Defendant testified he did not appear because of advice which his father gave him. Defendant stated he believed three men had broken into his apartment. As a result he rented a different apartment under an assumed name.

In addition, Alexander Kreydich, above referred to, testified at trial that defendant did not appear in court from October 9, 1975, to March 5, 1976. He testified during that time defendant lived at the residence of Judy Lipuma and the home of his parents without changing his name. The trial court denied the motion *in limine*. Defendant did not testify before the jury. As part of the evidence the parties stipulated that defendant was at liberty on bail on October 9, 1975; he failed to appear in court on October 9, 1975; a warrant was issued for his arrest and he was actually arrested on March 5, 1976. Defendant contends that the evidence of Kreydich refuted the State's contention regarding flight.

■ A number of cases in Illinois approve the use of evidence of flight "as a circumstance tending to show consciousness of guilt." (*People v. Harris* (1972), 52 Ill. 2d 558, 561, 288 N.E.2d 385.) Whether the conduct of any defendant under any given circumstances constitutes flight, and thus evidences consciousness of guilt, must be determined by various factual matters which are pertinent in determining guilt or innocence. The State's theory is that defendant failed to appear in court and moved to another address in an attempt to evade prosecution and thus indicated consciousness of guilt. The theory of defendant from the testimony of the witness Kreydich is that the defendant did not flee the jurisdiction but simply changed his address and made no other attempt to avoid detection.

■ These theories were based upon facts which were the subject of stipulation by the parties as above set forth and also upon the testimony of witness Kreydich introduced by defendant. The issue of conduct of defendant at this time received only superficial mention in the final arguments of both sides to the jury. We find no reversible error in this regard.

### IV.

On the issue of allegedly prejudicial final argument by the prosecutor, defendant contends:

(1) The prosecutor attacked Judy Lipuma's testimony by repeatedly stating his own opinion that a person could not drink a large bottle of gin in 20 minutes without becoming ill. The prosecutor told the jurors to use their common sense. He stated that when a person drinks a large quantity of gin in a short period of time, with nothing to eat, that person is going to be sick. The trial court overruled defendant's objection.

■ The Illinois cases have held repeatedly that a prosecutor may reflect

unfavorably upon the defendant and may draw unfavorable inferences from the defendant provided that he bases his remarks upon the evidence. (*People v. White* (1977), 48 Ill. App. 3d 907, 913, 363 N.E.2d 408, *appeal denied* (1977), 66 Ill. 2d 636.) An argument by the prosecutor is proper as long as it is based upon relevant evidence in the record or legitimate inferences therefrom. (*People v. Wright* (1974), 56 Ill. 2d 523, 531, 309 N.E.2d 537.) In our opinion this argument by the prosecutor was within the bounds of propriety. In effect, it simply told the jury to use their common sense and that they would then conclude that the assailed testimony was unworthy of belief.

■■ (2) The prosecutor stated that Judy Lipuma had reason to lie and did lie. He stated that the State's witnesses did not have reason to lie but that Judy Lipuma did. The law applicable to this situation permits a prosecutor to charge that a defendant or a defense witness lied as long as it is apparent that this opinion is based on the evidence or reasonable inferences therefrom. (*People v. Owens* (1977), 46 Ill. App. 3d 978, 994, 361 N.E.2d 644, *appeal denied* (1977), 66 Ill. 2d 634.) An argument very similar to the one assailed by the defendant in the instant case was found not to constitute reversible error. (*People v. Jackson* (1974), 19 Ill. App. 3d 689, 695, 312 N.E.2d 405, *cert. denied* (1975), 420 U.S. 935, 43 L. Ed. 2d 412, 95 S. Ct. 1144.) The prosecutor there argued that the witnesses for the State "had no reason to lie when they identified the defendant, and that the defendant had a greater interest in or motive for lying." *Jackson*, 19 Ill. App. 3d 689, 695.

(3) The prosecutor stated that Judy Lipuma was the only witness who testified that defendant had drunk a large bottle of gin in half an hour. She also testified that she did not make that statement to anyone else until two days before trial when she was called by the defense attorney. The prosecutor then pointed out that no other member of Judy Lipuma's family, mentioning her mother, brother and sister, testified to this fact, although she stated that the defendant had been at her home virtually all night.

In cases involving an alibi, it has been held that the failure of a defendant to produce available witnesses is a proper subject for comment by the prosecution. (*People v. Blakes* (1976), 63 Ill. 2d 354, 359, 348 N.E.2d 170.) Judy Lipuma testified her brother and sister were present when the defendant quickly drank the bottle of gin. Although these persons thus mentioned by the prosecutor were not actually alibi witnesses, we cannot believe that the outcome of the trial hinged upon, or was even influenced by, this comment of the prosecutor. We therefore conclude that this argument was harmless beyond a reasonable doubt. See *People v. Beller* (1979), 74 Ill. 2d 514, 526, 386 N.E.2d 857.

■ In addition, applicable to all of these contentions concerning final

argument, we find that these arguments did not constitute "a material factor in the conviction" (*People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 363); and did not result in "substantial prejudice to the accused" (*People v. Nilsson* (1970), 44 Ill. 2d 244, 248, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881.) Our study of the evidence convinces us beyond reasonable doubt that the verdict here would not have been different had these comments by the prosecutor not been made. (*People v. Trice* (1970), 127 Ill. App. 2d 310, 319, 262 N.E.2d 276.) The trial judge was in a better position than any reviewing court to pass upon the assailed arguments. We find no clear abuse of discretion, and we accordingly find no reversible error in the rulings by the trial court. *People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324.

## V.

Defendant finally claims denial of due process on the ground the indictment was obtained by abuse of the grand jury process. After a preliminary hearing there was a finding of no probable cause for burglary but probable cause for aggravated battery. The prosecutor did not inform the grand jury of these findings. Instead he presented hearsay testimony and the grand jury indicted defendant for aggravated battery and burglary. Defendant concedes here that *People v. Creque* (1978), 72 Ill. 2d 515, 382 N.E.2d 793, "is dispositive of this issue in the case at bar." We agree with that statement.

■■■■ It has been repeatedly held that an indictment may properly be based solely on hearsay. (See *Creque*, 72 Ill. 2d 515, 521.) The finding of no probable cause at the preliminary hearing does not bar a subsequent indictment. The preliminary hearing and the return of the indictment are actually alternative avenues of prosecution. (*People v. Kent* (1972), 54 Ill. 2d 161, 295 N.E.2d 710.) The law requires that a showing of preindictment denial of due process be made "only with certainty." (*People v. Lawson* (1977), 67 Ill. 2d 449, 457, 367 N.E.2d 1244.) We find no such showing in the instant case.

The judgment appealed from is accordingly affirmed.

Affirmed.

McGLOON and O'CONNOR, JJ., concur.