THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DALE DAVIS, Defendant-Appellant.

First District (2nd Division)    No. 80-32

Opinion filed February 3, 1981.—Rehearing denied March 9, 1981.

188

Ralph Ruebner and Phillip J. Zisook, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

On April 19, 1978, two police officers on patrol stopped defendant for questioning because he matched the description of an attempted automobile theft suspect. When defendant drew a pistol, he was arrested and charged by information with the unlawful use of a weapon. (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(a)(10).) Defendant was convicted thereof by a jury. He argues on appeal that: testimony given with respect to the attempted auto theft constituted improper "other crimes" evidence; a pair of handcuffs found tucked in defendant's waistband during the arrest were improperly admitted in evidence; the State made prejudicial comments in its closing argument; and the trial court unconstitutionally employed the extended term provision of the sentencing statute. For the reasons set forth below, we affirm.

Defendant's plea of guilty to the above-cited charge on October 25, 1978, resulted in a sentence of three years in the penitentiary, which was subsequently vacated on January 11, 1979, on defendant's motion. A trial ensued and concluded on April 2, 1979, with a hung jury, resulting in a mistrial. On November 16, 1979, defendant's second jury trial began. Defendant's motion *in limine* to preclude the prosecution from disclosing, first, that he was carrying a pair of handcuffs when he was arrested and, second, that the arresting police officers were investigating an attempted automobile theft prior to his arrest, was denied. The trial court did direct the prosecution not to inquire as to why defendant was carrying the handcuffs unless he first raised the subject.

At trial, Chicago police officers Thomas Patterson and Robert Roman both testified to substantially the same sequence of events. On April 19, 1978, while in uniform in a marked police squad car, they received a radio message at 3:30 p.m. of an automobile theft in progress at the intersection of 88th and State Streets. They drove west on 89th toward State. They saw a black male wearing a blue jean jacket and a black cap emerge from an alley east of State. Continuing to 88th and State, they met two other police officers who were talking to a third man next to a car with a screwdriver sticking out of its ignition. The offender was described by the officers to Patterson as a black male wearing a blue jean outfit and a black cap who had left the scene going toward 89th Street through the alley. Patterson and Roman returned to their squad car, drove southward in the alley, turned east on 89th Street, and about a block east of the alley they saw the same man they had seen earlier emerge from the alley. Both officers identified defendant in court as this man.

The officers pulled alongside defendant, stopped their car, and as they alighted defendant took a quick step forward. Officer Roman ordered defendant to stop and approached him with his hand extended.

Defendant pushed Roman's hand away, stepped backwards, and placed his right hand into his right pants pocket. When Roman ordered defendant to take his hand from his pocket, defendant withdrew a Derringer pistol and pointed it at Roman. Both officers drew their own guns and aimed at defendant, who then threw his gun over his shoulder. Defendant was arrested. While searching him, the police discovered a pair of handcuffs in his waistband. Patterson retrieved defendant's pistol; its chamber contained two live rounds of ammunition. Defendant was taken to the police station where Patterson inventoried the Derringer, bullets and handcuffs. During questioning, defendant denied ever having possession of the gun. The gun was not forwarded to the fingerprint laboratory for analysis, but was given a ballistics test. No·charges were placed against defendant for aggravated battery, attempt auto theft, or striking a police officer. The gun and the handcuffs were admitted into evidence without objection. Following their admission into evidence, a defense motion to exclude the exhibits from the jury's view was denied.

Defendant testified on his own behalf. On the day in question, he was seeking employment and had applied for a job at 90th and State Street. He saw the squad car approach him as he was walking down 89th Street, so he reached into his pocket, removed a quantity of marijuana and threw it over a fence. The squad car then pulled up next to the curb and both officers emerged from the car with their weapons drawn. One officer stood by the car and pointed his gun at him and the other approached with a gun pointed at his face. Defendant moved the officer's hand out of the way. The officer jumped back and told defendant to raise his hands, turn around, and stand against a fence. The officer searched defendant and found a pair of handcuffs in his pocket. The other officer looked for what defendant had thrown but came back emptyhanded. He was placed in the squad car and questioned about different crimes in the area. When defendant asked what he was charged with, the officers said that they "would think of something." Defendant was then taken to the police station and placed in a small room. One of the arresting officers placed a gun on the table, which defendant identified as the Derringer admitted in evidence during the State's case-in-chief, and told defendant to touch it but defendant refused. On cross-examination, defendant again acknowledged that he was carrying handcuffs that day. The prosecutor then asked if defendant was a detective, and a defense objection thereto was sustained.

Over defendant's objection, the jury was allowed to take the gun and the handcuffs into the jury room with them to deliberate. Defendant was found guilty as charged. After a hearing in aggravation and mitigation, defendant was sentenced to 7 years under the extended term provisions of

the Uniform Code of Corrections. Ill. Rev. Stat. 1977, ch. 38, par. 1005—5—3.2(b)(1).

■■ Defendant identifies trial court error in its having allowed the police officers to testify concerning the attempted auto theft because such testimony was immaterial, prejudicial and constituted impermissible "other crimes" evidence, requiring reversal. Evidence of other crimes committed by a defendant is inadmissible to show that the defendant has a propensity to engage in criminal activity; however, such evidence is admissible when relevant for other purposes. (*People v. Baptist* (1979), 76 Ill. 2d 19, 27, 389 N.E.2d 1200.) Other crimes evidence has been held admissible if relevant to demonstrate knowledge, intent, motive, design, plan or identification (*People v. Lindgren* (1980), 79 Ill. 2d 129, 137, 402 N.E.2d 238; *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489), and has also been admissible when relevant to police investigation of the offense at issue where such investigatory procedures involved an integral part of the narrative of that arrest. *People v. Morthole* (1977), 51 Ill. App. 3d 919, 932, 366 N.E.2d 606; *People v. Schubert* (1975), 28 Ill. App. 3d 599, 604, 329 N.E.2d 23; *People v. Longstreet* (1974), 23 Ill. App. 3d 874, 880-81, 320 N.E.2d 529; *People v. Jackson* (1968), 103 Ill. App. 2d 209, 222, 243 N.E.2d 551, *cert. denied* (1970), 397 U.S. 957, 25 L. Ed. 2d 142, 90 S. Ct. 948; McCormick, Evidence §190, at 448 (2d ed. 1972); *cf. People v. Smith* (1976), 37 Ill. App. 3d 1016, 347 N.E.2d 257.

■■■ In *People v. Morthole*, defendant was charged with the possession of drugs discovered during an arrest. The arresting officer testified that he arrested and searched defendant that day because of an outstanding arrest warrant for an unrelated drug delivery charge. Such evidence was proper, although it suggested other criminal activity, because it was relevant to the circumstances of the arrest. Similarly, in *People v. Longstreet*, evidence was admitted showing that the victim had identified his assailants from a photo display of prior armed robbery offenders. There, as in *Morthole*, the evidence suggested other criminal activity; however, it was properly admitted as an integral part of the investigatory procedure. At bar, it was within the trial court's discretion to admit other crimes evidence (*People v. Walters* (1979), 69 Ill. App. 3d 906, 918, 387 N.E.2d 1230; *People v. Gonzales* (1978), 60 Ill. App. 3d 980, 993, 377 N.E.2d 91), in order to permit the State to establish the reason for defendant's arrest. Without this testimony, the "* * * jury would have been faced with the unexplained fact that policemen suddenly appeared * * *" and stopped defendant that day. (*People v. Lonzo* (1977), 47 Ill. App. 3d 939, 945, 365 N.E.2d 528.) This impetus could have been established, however, without some of the detail included within the officers' testimony. Specifically, it was unnecessary to comment upon the screwdriver protruding

from the auto's ignition which could only have served to distract the jury from the offense at issue, unlawful use of a weapon. In light of the weight of the evidence against defendant, we find this error to be harmless. Defendant relies upon *People v. Connors* (1980), 82 Ill. App. 3d 312, 319, 402 N.E.2d 773, in support of his position; however, there the police arrested defendant pursuant to a radio report of the crime with which he was charged and it was unnecessary for the arresting officer to testify concerning his knowledge of another crime committed by defendant in order to establish the impetus for the arrest. The unlawful use of weapons charged in the instant case developed after the police stopped defendant for questioning on the attempt auto theft. The State was entitled to explain why defendant was stopped at all under these circumstances. We find no error.

■■ Defendant asserts that the handcuffs were irrelevant to the charge of unlawful use of a weapon, and their admission in evidence constituted reversible error. We disagree. In *People v. Hagen* (1978), 63 Ill. App. 3d 944, 948-49, 380 N.E.2d 954, police testimony described miscellaneous articles found in defendant's possession at the time of his arrest, including a screwdriver and a police radio. While not related to the charge of burglary, the appellate court held that this evidence was properly admitted as part of the circumstances of the arrest and no error had occurred through their admission. In *People v. Longstreet*, the defendant was charged with armed robbery, committed with the use of a snub-nose pistol. When defendant was arrested at his home some time later, three pistols were found and all were held to have been properly admitted in evidence as part of the detail concerning the arrest. Evidence concerning an arrest may not be required to prove any charge; yet, it may be probative of "* * * acts which are closely and inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances * * *." (*People v. Olivas* (1976), 41 Ill. App. 3d 146, 150, 354 N.E.2d 424.) Similarly, in the present case, the handcuffs were intertwined with the circumstances of the arrest. Wide latitude is generally accorded a trial court in relevancy determinations (*People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14); in any event, the introduction of the handcuffs could not have resulted in prejudicial error. (*People v. Houck* (1977), 50 Ill. App. 3d 274, 288, 365 N.E.2d 576.) The cases relied on by defendant at bar, *People v. Liapis* (1972), 3 Ill. App. 3d 864, 279 N.E.2d 368, and *People v. Miller* (1968), 40 Ill. 2d 154, 238 N.E.2d 407, *cert. denied* (1968), 393 U.S. 961, 21 L. Ed. 2d 375, 89 S. Ct. 401, are clearly distinguishable as both dealt with the admission of physical evidence which lacked proper foundational bases.

■■ Defendant next addresses several comments made by the prosecutor in closing argument alleged to have been prejudicial. The prosecutor began his closing argument by informing the jury that "what happens at

this stage of the proceedings is no different than any other trial in which a *criminal* is tried." (Emphasis added.) Defendant's objection to this characterization was sustained and the trial court then instructed that whether defendant is a criminal is a determination to be made by the jury. Defendant asserts that this comment was improper and that the prejudice was not cured by the instruction. The State responds that such a characterization can be made where supported by the evidence, citing *People v. Hovanec* (1979), 76 Ill. App. 3d 401, 424, 394 N.E.2d 1340. The court there found no error in the prosecutor's reference to defendants as "street thugs," where such a comment was an inference fairly drawn from the evidence. In *People v. White* (1977), 48 Ill. App. 3d 907, 913, 363 N.E.2d 408, the court held that the prosecutor's reference to defendant as a "thug, thief and a vulture" also was supported by the record. Even were we to deem the prosecutor's statement to have overstepped the bounds of fair comment, any prejudice which may have resulted was clearly dissipated by the trial court's instruction.

■▌ The prosecutor is alleged further to have improperly commented on defendant's veracity as well as that of the police officers. During closing argument, the prosecutor stated that defendant's testimony was "nothing less than incredible" and was a "fabrication of the worst kind." Defendant, during his closing argument, addressed the credibility of the police officers by saying, "That's someone who is unbiased? * * * That's a disinterested third party? * * * You know he's not telling the truth." The prosecutor during rebuttal then responded, "What reason would two officers * * * with six years of experience * * * have to come in here and lie? I submit to you, absolutely none." Defendant claims that the State's initial and rebutting closing comments were improper. A prosecutor must not inject his personal opinions as to the guilt or veracity of a defendant, or vouch for the credibility of State's witnesses; however, it is not improper for a prosecutor to challenge a defendant's testimony as false when based upon the evidence and inferences therefrom, as in the case *sub judice. (People v. Sinclair* (1963), 27 Ill. 2d 505, 509, 190 N.E.2d 298; *People v. Wirth* (1979), 77 Ill. App. 3d 253, 260, 395 N.E.2d 1106; *People v. Daniels* (1979), 76 Ill. App. 3d 646, 652, 395 N.E.2d 163.) We believe that the initial closing argument comments were within permissible bounds. Further, defendant's closing argument, that the police officers were biased and had lied, invited the State's response thereto in rebuttal. *People v. Moore* (1979), 71 Ill. App. 3d 451, 454, 389 N.E.2d 944; *People v. Dykes* (1978), 66 Ill. App. 3d 403, 408, 383 N.E.2d 1210, *cert. denied* (1979), 444 U.S. 940, 62 L. Ed. 2d 305, 100 S. Ct. 292; *People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847.

■▌ Defendant maintains that it was improper for the prosecutor to refer to the attempted automobile theft in closing argument. As we have earlier indicated, because this testimony was properly admitted, it was not error

for the prosecutor to include it within his summation of the facts during closing. Defendant assigns error in a comment on the handcuffs made by the prosecution during closing rebuttal. Defense counsel during his closing argument had attempted to explain defendant's possession of handcuffs when arrested, stating that young people today have a wide variety of unusual habits including, for instance, wearing holsters, and suggesting that carrying handcuffs might also be another such "crazy habit." The prosecution in rebuttal, in an apparent response to this explanation, stated, "What is he doing with the handcuffs? What goes with the handcuffs * * * but a gun." Defendant's objection thereto was sustained and the jury was instructed to disregard anything not based on the evidence. Defendant insists that this prosecutorial observation exceeded the bounds of fair comment because the handcuffs were admitted, according to the State's argument, merely as a part of the narrative of the arrest, whereas in closing argument, the State suggested that possession of handcuffs strengthened the supposition that defendant was in possession of a weapon. The State responds that this comment was invited by defense counsel's explanation that young people have unusual habits. We agree with defendant's characterization of the comment as improper; however, it did not constitute a material factor in his conviction and did not result in substantial prejudice to him. *People v. Wirth* (1979), 77 Ill. App. 3d 253, 261, 395 N.E.2d 1106; *People v. Franklin* (1978), 64 Ill. App. 3d 400, 405, 380 N.E.2d 1082.

Defendant's final argument addresses sentencing. After defendant initially pleaded guilty, the trial court entered a sentence of 3 years under section 5—8—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1), which provides that a Class 3 felony sentence shall be not less than 2 years nor more than 5 years. Defendant's subsequent motion to withdraw the plea and vacate the 3-year sentence was then granted in order for defendant to be tried by a jury. The jury returned a guilty verdict. At the sentencing hearing conducted thereafter, the State requested a 10-year sentence under the extended term provision based on defendant's previous convictions of Class 3 felonies. The extended term statute (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2), provides that a sentence for a Class 3 felony shall be not less than 5 years and not more than 10 years when the trial court elects to use this provision. A factor which the trial court may consider in deciding to employ the extended term provision is whether the defendant had been convicted of a felony of the same or a greater class within the previous 10 years. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b).) The trial court then imposed a 7-year sentence. Defendant's argument on appeal is that, because the trial court employed the extended term provision at the hearing subsequent to the guilty verdict, but had not employed it at the hearing on his guilty plea although the court was informed of his previous criminal

background, he was unconstitutionally penalized for electing to stand trial.

■■ An enhanced sentence may not be imposed merely because a defendant exercises his constitutional right to trial. (*People v. Moriarty* (1962), 25 Ill. 2d 565, 185 N.E.2d 688; *People v. Dennis* (1975), 28 Ill. App. 3d 74, 328 N.E.2d 135.) The fact that a heavier sentence was imposed after trial than one offered prior to trial does not necessarily justify the inference that the higher sentence was imposed as a punishment, however. (*People v. Houston* (1974), 21 Ill. App. 3d 209, 216, 315 N.E.2d 192, *cert. denied* (1975), 420 U.S. 936, 43 L. Ed. 2d 412, 95 S. Ct. 1145.) There must be an affirmative showing in the record that the greater sentence was intended as a punishment. (*People v. Massarella* (1979), 80 Ill. App. 3d 552, 573, 400 N.E.2d 436; *People v. Houston*.) The logic behind such a requirement is patent. Were it not for the possibility of a higher sentence after trial, any guilty plea would be without consideration to support it. (*People v. Houston*.) If a trial court could never impose a higher sentence after trial, the situation would arise, as the supreme court suggested in *People v. Morgan* (1974), 59 Ill. 2d 276, 281-82, 319 N.E.2d 764, that a defendant would enter a guilty plea, receive a sentence, then withdraw the plea with the guaranty that the trial court could not subsequently impose a greater sentence regardless of what evidence may be revealed at trial. Such a holding would seriously and unnecessarily erode the guilty plea procedures.

■■ There is no indication in the present record that the change in the sentence was a result of the trial court penalizing defendant for his election to stand trial. To the contrary, the court noted that upon trial it was better able to evaluate those who came before it, defendants and witnesses alike. A penitent attitude on the part of a defendant, or its absence, are among those factors which a court may evaluate at sentencing. (*People v. Gomez* (1963), 29 Ill. 2d 432, 194 N.E.2d 299.) Further, the trial court imposed a sentence of three years less than that recommended by the prosecution, which may also be considered with regard to this issue. (*People v. Hopkins* (1963), 29 Ill. 2d 260, 194 N.E.2d 213.) Defendant's position is therefore without merit, as is his contention that the extended term provision is an *ex post facto* violation because it became effective in 1978 and was applied to his 1972 and 1975 convictions. See *People v. Hanke* (1945), 389 Ill. 602, 60 N.E.2d 395.

For the reasons stated above no bases have been established upon which to reverse the result in this case, and we accordingly must affirm.

Affirmed.

STAMOS and PERLIN, JJ., concur.