THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
FRANKLIN T. JOHNSON, Defendant-Appellant.

First District (4th Division)    No. 80-59

Opinion filed February 25, 1982.

Ralph Ruebner and Steven Clark, both of State Appellate Defender's Office, of Chicago (Thomas Peters, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Adrienne Noble Nacev, and Sandra M. Stavropoulos, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial, defendant, Franklin T. Johnson, was found guilty of rape (Ill. Rev. Stat. 1975, ch. 38, par. 11—1(a)) and deviate sexual assault (Ill. Rev. Stat. 1975, ch. 38, par. 11—3(a)). He was sentenced to 100 to 200 years for rape and 50 to 100 years for deviate sexual assault. From that judgment and the sentences, defendant appeals.

The following issues are raised for review: (1) whether the evidence obtained as a result of defendant's arrest should have been suppressed; (2) whether defendant was prevented from testifying because of the trial court's alleged erroneous ruling that the State could impeach him with his prior convictions; (3) whether the trial court erred in allowing Officer Cannon to testify about a hearsay police radio report which implicated defendant in another rape; (4) whether the lineup and identification procedures used by the police were unnecessarily suggestive; (5) whether defendant was proved guilty beyond a reasonable doubt; (6) whether the prosecutor improperly influenced the grand jury by withholding evidence favorable to the accused; and (7) whether defendant's sentence was excessive and in violation of the Illinois Criminal Code.

We affirm and modify.

The testimony at trial was as follows. The complaining witness testified that on July 6, 1977, she was 15 years old and was babysitting for her

neighbors. She took the child outdoors for about an hour. En route back to the apartment, they turned the corner and nearly bumped into a man. The witness·described the man as a black person, about 6 feet in height, weighing 200 pounds, and having dark close-cropped hair and a slight mustache. He wore white painter's pants and a blue and red striped shirt with a white line running through it. He also wore sunglasses that were tinted darker at the top than at the bottom. A blue and white bandana was tied around his head and he carried an orange hand towel.

When the complaining witness and the child returned to the apartment, the child went into her bedroom and complainant went into the living room to put on some earrings. She turned around and saw a man—the same man she had nearly bumped in to on the street—whom she identified as defendant, standing in the doorway with a towel in his hand. Defendant told her not to say anything. He walked toward her and she backed away. He kept coming toward her as she backed away and asked him to "please go away." Defendant gave her the towel and told her to go into the bedroom. He asked her about the little girl. She told him the child was in another bedroom. He went to look for her and complainant began screaming. Defendant ran through the living room into the bedroom, jumped on complainant and began choking her with his arm, ordering her to "shut up." She stopped screaming and began to whimper. He released her; she rolled over and the towel fell from the bed. Defendant told her to put the towel around her face. He asked her when would her husband arrive; complainant told him that she was only 15 and was not married. He then asked when the child's parents would be arriving. Complainant responded that she expected them in 15 or 20 minutes. Defendant ordered her to remove her pants and she did so. He then had oral sex and sexual intercourse with her. Thereafter, he told her to roll over and to give him the towel; she was not to look at him. He then tied her feet with a scarf and left through the back door.

The victim wiggled out of the scarf, checked the apartment, locked the back door, called her mother, and then called the police. She was taken to the hospital and examined. Later, she gave a report to a police officer.

On July 14, 1977, the victim went to the Evanston Police Department to view a lineup. In the first lineup she viewed, she stated that her attacker resembled one of the men but sounded like another man. She then asked to see the lineup again. The second time, she "had to mentally put glasses on them all." She then chose defendant as her attacker. The victim viewed a photograph of the lineup in court and indicated that defendant, the number three man in the photograph, was her attacker.

Defendant's motion *in limine* to bar the State from introducing,

through Officer Cannon, any data the police had in their July 14, 1977, rape report was denied.

Officer Glen Cannon testified that he is employed by the Evanston Police Department and on July 14, 1977, he was on duty. A few days prior to that date, at roll call, he and other officers had received information concerning a person who was a suspect in the rape in the instant case. The composite described a heavy-set, muscular black male, approximately 5 feet 11 inches to 6 feet in height and weighing 200 pounds, who had close-cropped hair, balding on top. There was also a description of a possible red sports car or a red Volkswagen Beetle.

On July 14, 1977, a radio dispatch indicated that a rape had just occurred at an address near the address of the July 6 rape in Evanston. The description Officer Cannon heard was one of a black male, heavy-set, who had close-cropped hair. Officer Cannon was driving westbound on Lake Street, in Evanston. When he stopped for a red light at Ridge and Lake, he observed a red Volkswagen coming north on Ridge Avenue. As the car passed his vision, he noticed the driver was heavy-set and had close-cropped hair. He followed the car, stopped it, and took the driver (defendant) to the Evanston Police Station.

On cross-examination, Officer Cannon stated that he had stopped one or possibly two other people driving red Volkswagens and had not filed any police reports pertaining to those stops.

Foster Taylor testified that on July 6, 1977, he worked for a car dealer located behind the apartment building where the rape in the instant case occurred. On that day, he stepped outside the door to get some air and noticed a man had put some overalls by the garbage can. The man was wearing painter's overalls and got into a red Volkswagen; he drove very fast down the alley. Taylor thought the man had put the overalls in the red Volkswagen. Taylor stated that police came over later and he told them what he had observed. On July 14, 1977, he went to the Evanston Police Department to view a lineup where he identified defendant as the man he saw driving down the alley on July 6. He described defendant as a black male in his late thirties or early forties who had a bald spot on his head. After this testimony, the State rested. Then the defense rested its case. Subsequently, the jury returned a verdict of guilty of all charges.

Defendant contends the evidence obtained as a result of his arrest should have been suppressed because the police officer lacked probable cause to make the arrest. Further, defendant asserts that Officer Cannon did not observe anything unusual about defendant or his car prior to the stop; therefore, he did not have probable cause for the arrest.

A police officer may stop and question "any person in a public place for a reasonable period of time when the officer reasonably infers from

the circumstances that the person is committing, * * * or has committed an offense" (Ill. Rev. Stat. 1979, ch. 38, par. 107—14). The officer must have knowledge of sufficient facts at the time of the encounter to create a reasonable suspicion that the person in question has committed, or is about to commit, a crime. (*People v. Johnson* (1981), 97 Ill. App. 3d 1055, 1064, 423 N.E.2d 1206, 1213.) For a stop to be proper, there must have been specific and articulable facts which, together with inferences from those facts, reasonably justify the stop. *People v. Rose* (1979), 75 Ill. App. 3d 45, 50, 393 N.E.2d 698, 703.

In the instant case, the record reveals that the officer had sufficient information to warrant defendant's investigative stop. Cannon was aware of the description of the rapist in this case. Prior to stopping defendant, Cannon had received information that a rape had just occurred. A description of the offender was also given. Based on the specific descriptions of the rapist and his car, Officer Cannon stopped defendant because defendant and the car, which he was driving, matched those descriptions. The officer's action in stopping defendant in order to investigate further was warranted, especially since the officer would be expected to act quickly in order to maintain the status quo. *People v. Johnson* (1981), 97 Ill. App. 3d 1055, 1065.

The test of probable cause for an arrest without a warrant is whether a reasonable and prudent man in possession of knowledge which has come to the arresting officer would believe the person to be arrested is guilty of the crime. (*People v. Henderson* (1976), 36 Ill. App. 3d 355, 375, 344 N.E.2d 239, 255.) It is something less than evidence that would result in conviction and is based on factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act (36 Ill. App. 3d 355, 375). In addition, probable cause may be established on the basis of all information possessed by policemen working in concert. *People v. Rose* (1979), 75 Ill. App. 3d 45, 50, 393 N.E.2d 698, 703.

■▌ Officer Cannon stopped defendant, observed his general appearance and the car. These facts, coupled with the information concerning the rapist which he already had, were sufficient to create a reasonable suspicion that defendant was involved in the instant rape. We, therefore, find that the investigative stop and subsequent arrest of defendant were proper.

Defendant next contends the trial court erroneously ruled that his prior convictions for rape and robbery were admissible for impeachment purposes and thereby prevented him from testifying in his own behalf. He argues that this ruling was contrary to the holding in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, since the prejudicial effect of the admission substantially outweighed any probative value of the conviction. Relying on *People v. Wright* (1977), 51 Ill. App. 3d 461, 366

N.E.2d 1058, he asserts that evidence of defendant's prior rape convictions bear only slightly, if at all, on defendant's credibility but will indicate to the jury defendant's disposition to commit rape.

■■ We do not accept defendant's argument. In *Montgomery*, the Illinois Supreme Court held that a defendant's prior convictions may be admitted for impeachment purposes if the offense is punishable by imprisonment in excess of 1 year or involved dishonesty, and if the conviction or release from confinement was within 10 years, unless the judge determines that the probative value is substantially outweighed by the danger of unfair prejudice. (47 Ill. 2d 510, 516.) According to *Montgomery*, this rule leaves room for the operation of sound judicial discretion to play upon the circumstances as they unfold in a particular case. (47 Ill. 2d 510, 517.) The record reveals a discussion of the *Montgomery* decision, the nature of the prior conviction, and a concern for the possible prejudicial impact of that prior conviction. In view of the foregoing, we conclude that the trial court did not abuse its discretion by admitting evidence of defendant's prior convictions.

■■ We also reject defendant's argument that the trial court's ruling prevented him from testifying in his own defense. A similar argument was rejected in *People v. Ganter* (1977), 56 Ill. App. 3d 316, 327, 371 N.E.2d 1072, where the court answered this contention in the following manner:

> "The mere fact that the defendant decided not to risk the possibility of prejudicial impeachment does not mean that the ruling was erroneous. If so, any time a defendant unsuccessfully moves prior to trial to suppress use of a prior conviction, the defendant on appeal would be able to defeat the trial judge's discretion, regardless of whether the ruling was legally correct, by arguing that it prevented him from testifying at trial."

As the trial court's ruling was proper, defendant's decision not to testify was a question of trial strategy which may appear incorrect in hindsight. Since there was no abuse of discretion on the trial court's part, this issue is without merit. *People v. Hovanec* (1979), 76 Ill. App. 3d 401, 422, 394 N.E.2d 1340, 1356.

Defendant contends the trial court erred by allowing Officer Cannon to give testimony concerning a police radio message which reported a rape. Cannon had received this information prior to his arrest of defendant.

Where testimony of other crimes has no value beyond the inference that because a man has committed other crimes he is more likely to have committed the current crime, that testimony is excluded. (*People v. Lehman* (1955), 5 Ill. 2d 337, 342, 125 N.E.2d 506, 509.) Nevertheless, such evidence is admissible when relevant to police investigation of the offense

at issue where such investigatory procedures involved an integral part of the narrative of that arrest. *People v. Davis* (1981), 93 Ill. App. 3d 187, 191, 416 N.E.2d 1179, 1181-82.

■■ In the case at bar, it was within the trial court's discretion to admit other crimes evidence, *(People v. Davis* (1981), 93 Ill. App. 3d 187, 191), in order to permit the State to establish the reason for defendant's arrest. Without the testimony concerning the rape, the "jury would have been faced with the unexplained fact that policemen suddenly appeared * * *" and stopped defendant that day. (93 Ill. App. 3d 187, 191.) Clearly, the State was entitled to explain why defendant was stopped. Therefore, we find no error.

Defendant next contends that the lineup and identification procedures used by the police were unnecessarily suggestive. According to defendant, the procedures were suggestive because the victim was allowed to view two lineups. At the first lineup, she did not identify defendant; however, at the second lineup, defendant was chosen. Thus, the repetitious viewing, coupled with the fact that defendant was the only bald and bearded person, resulted in an unnecessarily suggestive lineup. We disagree.

The burden is on defendant to establish that within the totality of the circumstances the lineup was unnecessarily suggestive as to give rise to a substantial likelihood of irreparable mistaken identification. (*Stovall v. Denno* (1967), 388 U.S. 293, 301-02, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967, 1972; *People v. Jackson* (1974), 24 Ill. App. 3d 700, 704, 321 N.E.2d 420, 423.) Should defendant succeed in meeting this burden, then the in-court identification might, absent other circumstances, be held inadmissible. However, substantial differences in age and appearance between suspects and others exhibited in a lineup do not in themselves establish that a lineup was unnecessarily suggestive. Such differences affect only the credibility of the identification, not its admissibility. (*People v. Jackson* (1974), 24 Ill. App. 3d 700, 704.) In any event, even if the lineup is found to have been improper, the in-court identification may still be admissible provided the State established by clear and convincing evidence that the identification is based on an observation independent of and prior to the tainted lineup. *People v. Jackson* (1974), 24 Ill. App. 3d 700, 704.

■■ In the present case, the identification was admissible because the differences between defendant and others in the lineup were not of the sort which affect admissibility of the identification. The fact that the complaining witness failed to state that defendant was balding affected only the credibility of her testimony. Moreover, the balding area was not visible to the victim because defendant was wearing a bandana. We believe defendant failed to meet his burden of establishing that the lineup was suggestive. As was previously stated, differences in age and appear-

ance between suspects do not establish that the lineup was unnecessarily suggestive. Furthermore, the State met its burden of showing an independent origin for the in-court identification. The record shows that the victim had ample opportunity to view her attacker under adequate lighting conditions. In fact, she had viewed defendant outside during daylight hours and inside during the course of the attack. Consequently, the trial court did not err by admitting this identification testimony.

Defendant contends he was not proved guilty beyond a reasonable doubt because the victim's identification of defendant was not sufficiently reliable to support a finding of guilty. Additionally, Taylor's identification was not sufficiently reliable since it was based on a momentary observation of a male Negro in a car which was moving fast.

> "[W]here the identification of the accused is at issue, the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made." (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.)

As we have already discussed, the victim of the instant rape viewed defendant under circumstances which would permit a positive identification to be made, and her testimony was clear and consistent regarding her identification and the circumstances of the attack.

A reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses (complainant and Taylor) and we will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilty (*People v. Manion* (1977), 67 Ill. 2d 564, 578.) We find that the evidence fully supported the jury's verdict.

Defendant contends the prosecutor improperly influenced the grand jury to secure an indictment against him. The prosecutor failed to disclose to the grand jury that the victim never described her assailant as bald or bearded and that she initially identified someone else as her assailant.

The facts pertinent to this contention are as follows. On July 15, 1977, the Cook County grand jury met to consider the charges against defendant. The State's witness was Officer Frank Kaminski, a youth officer for the city of Evanston. Kaminski's testimony recounted the conversation he had with the victim on the afternoon of the rape. This testimony is the evidence upon which the grand jury based the true bill for rape and deviate sexual assault.

Defendant's argument is foreclosed by the supreme court's decision in *People v. Creque* (1978), 72 Ill. 2d 515, 382 N.E.2d 793. In *Creque*, the supreme court held that an indictment may be based solely on hearsay

evidence (72 Ill. 2d 515, 522) and that a prosecutor is under no duty to present all the incriminating evidence he has, nor to inform the grand jurors of the existence of additional or more direct evidence. 72 Ill. 2d 515, 525.

Defendant finally contends that his sentence of 100 to 200 years for rape to be served consecutively with a prior sentence violates the sentencing provisions of the Illinois Code of Corrections, and the sentence is excessive.

■■ Defendant's argument is based on the sentencing provision which became effective on February 1, 1978. However, defendant elected to be sentenced under the old Act (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1(b)(2)). The supreme court has repeatedly held that the trial judge is normally in a better position to determine the punishment to be imposed than are the courts of review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.) We find that the length of defendant's sentences were determined by the trial judge and we will not alter those sentences.

The more difficult question is whether defendant should serve his sentences consecutively with a prior sentence of 50-100 years. A sentence of imprisonment should be imposed when (1) such a sentence is necessary for public protection, or (2) the seriousness of the offender's conduct would otherwise be deprecated or the ends of justice would not otherwise be served. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1(a).) We are further mindful of the Illinois constitutional directive that all penalties be determined both according to the seriousness of the offense and with the purpose of restoring the offender to useful citizenship. *People v. Mick* (1980), 86 Ill. App. 3d 1002, 1029, 408 N.E.2d 1079, 1086.

■■ Pursuant to Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1979, ch. 110A, par. 615(b)(4)), a reviewing court may reduce the punishment imposed by the trial court. We conclude that the above purposes would be better served if defendant's prior sentence is served concurrently with the sentences imposed in this case. A sentence which has the greatest potential of restoring the offender to a useful and productive place in society, while at the same time adequately punishing the offender for his misconduct and safeguarding the public from further offenses, is the one which should be imposed. (86 Ill. App. 3d 1022, 1030.) Accordingly, we order that all sentences are to be served concurrently.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed as modified.

Affirmed as modified.

ROMITI and LINN, JJ., concur.